MISSOURI, KANSAS & TEXAS RY. CO. OF TEXAS v. ROCKWALL COUNTY LEVEE IMPROVEMENT DISTRICT NO. 3.

No. 4293. Decided June 22, 1927.
(297 S. W., 206).

*C. C. Huff; Foree, Isbell & Ridgell,* and *J. M. Chambers,* for plaintiff in error.

The concurrence of only two of the three appointed, qualified and acting commissioners in assessing the damages, was not a compliance with Art. 6522, R. S., and the special judge erred in overruling defendant's motion to reject such assessment because of it not being

the unanimous decision of the three commisisoners. Rev. Stats., Arts. 6522, 6523.

The defendant having presented to the court its written request that the case be submitted to the jury upon special issues of fact before the preparation or submission of any charge to the jury and the cause being one wherein the facts could be submitted to the jury in the form of special issues, the action of the trial court, in refusing to so submit the case, was material error and the violation of a mandatory statute, securing to the defendant a substantial right, for which error defendant is entitled to a reversal of the judgment rendered. Rev. Stats., 1984a; Railway Co. v. Jackson, 92 Texas, 638; J. M. Guffie Petroleum Co. v. Dinwiddie, 168 S. W., 439; Gordon v. Jones Construction Co., 172 S. W., 987; Shaw v. Garrison, 174 S. W., 942; Dorsey v. Cogdell, 210 S. W., 303; Buckholts State Bank v. Graf, 200 S. W., 858; Watson v. Corley, 226 S. W., 481.

Under the grant of eminent domain made by Sec. 38 of said Chap. 146, Acts 1915, it is sought to condemn a right of way for the construction of the levee at a mean distance of 600 feet from the bank of the East Fork of the Trinity River, nowhere nearer the bank than 200 feet and at the place in question 1100 feet, for the purpose of protecting from the overflow waters of the river that portion of the levee district lying on the opposite side of the levee from the river, and as such purpose is not one for which the right of eminent domain may be exercised under the power granted by Sec. 38, a verdict should have been directed as requested. The grant of the power of eminent domain to a corporation is to be strictly construed against the grant and in favor of the person whose property is to be taken. Crawford v. Frio Co., 153 S. W., 388; Dallas Hunting & Fishing Club v. Dallas County Bois d'Arc District, 235 S. W., 607; Thompson v. Manchester, 101 Atl., 212; Cooley on Constitutional Limitations, 7th Ed., 362; Sec. 17, Art. 1, of the Constitution.

The entire Act under which the plaintiff was created, and which confers upon plaintiff the only right of eminent domain which it possesses, being unconstitutional because of containing two separate and distinct subjects, both of which are expressed in the title hereof, the requested peremptory instructions should have been given.

It being shown by the evidence without conflict that defendant's right of way, a portion of which is sought to be condemned, is a continuous tract of land, approximately 100 feet in width, extending from the north line of the State through Rockwall County to Harris

County, Texas, and it being further shown by competent evidence that the condemnation of the portion of the right of way for plaintiff's levee and the appropriation thereof to such use in the manner proposed by plaintiff will destroy 625 lineal feet of the solid embankment between the levee and the river, which cannot be replaced by anything less expensive than concrete trestling, that will be as serviceable and durable as the embankment, and that such trestling would cost $80.00 per foot or $50,000.00 besides the cost of removing the embankment, and will so interfere with the use of the other portion of the right of way and roadbed adjoining and in the immediate vicinity of the tract sought to be condemned as to render it absolutely necessary to elevate over two thousand feet of the track, including the steel span over the river, and to construct four new fifty-foot spans of steel bridging, and to rebuild 150 feet of new concrete trestle in lieu of the present piling trestling now standing between the west end of the steel span and east end of the solid embankment, all of which would entail an expense of over $200,000.00 without any increase of the serviceability or durability of the roadbed except the 150 feet of pile trestling at the west end of the steel span, which would be replaced with more durable material, and it being further shown by the evidence that the value of the roadbed and right of way will be depreciated to the extent of the cost of these necessary changes, which will be substantially the damages defendant will sustain as a result of the proposed construction of the levee, all of which it is entitled to recover in this proceeding, the court erred in instructing the jury that they should not consider any of the costs and expenses in making changes made necessary by the construction of the proposed levee, but they would say by their verdict, what damages, exclusive of such cost and expenses, the defendant will suffer by the condemnation and use of its railway dump as it now exists for levee purposes as proposed and the value of the land which will be actually taken for the construction of the levee, and the Court of Civil Appeals erred in holding that such instruction was not error.

Property can not be taken for a public use under police power, but only by the power of eminent domain. Western Union Tel. Co. v. Penn Ry. Co., 195 U. S., 540; L. & N. Ry. Co. v. Interstate Ry. Co., 62 S. E., 369.

The protection of Sec. 17, Art. 1, against the taking, damaging or destroying property for a public use without compensation applies only to and as a limitation upon the exercise of the power of eminent domain, Norris v. Waco, 57 Texas, 635, but does not apply in all

cases where private property is taken or its value diminished in the exercise of such power. G. C. & S. F. Ry. Co. v. Fuller, 63 Texas, 467; H. & G. N. Ry. Co. v. Meador, 50 Texas, 77.

The legislature has authority to impose the burden of making compensation for consequential damage resulting from the exercise of police power. Transportation Company v. Chicago, 99 U. S., 635.

The burden of making compensation for all property taken, damaged or destroyed in the exercise of all or any of the powers conferred upon the plaintiff district is clearly and expressly imposed, whatever be the character of the power. Sec. 38, Chap. 146, Acts 1915, under which plaintiff was created.

That an injury or damage inflicted by an individual for private purposes, which would be actionable at common law, is actionable by reason of Art. 1, Sec. 17, Constitution, if inflicted for public purposes under legislative authority. G. H. & W. Ry. Co. v. Hall, 78 Texas, 169; Heilbron v. St. Louis S. W. Ry. Co., 113 S. W., 610.

And the legislature is powerless to grant an exemption from such liability. Fort Worth Imp. Dist. No. 1 v. Fort Worth, 106 Texas, 148.

That drainage, reclamation and levee improvement districts, organized on the petition of the land owners of the district, for the primary purpose of improving the lands, the expenses to be borne by taxes levied against the property of the district, cannot escape liability for consequential damages, under the police power exemption. Fort Worth Imp. Dist. No. 1 v. Fort Worth, 106 Texas, 148; Dallas County Imp. Dist. No. 3 v. Ayres, 246 S. W., 1112; Bruntmeyer v. Squaw Dr. Dist. No. 1, 194 S. W., 748; Croft v. Millard Co. Dr. Dist. No. 1, 202 Pac., 539; Bradbury v. Vandalia Levee & Dr. Dist., 86 N. E., 163; Ruling Case Law, Vol. 9, pp. 620–1, Secs. 5 and 6.

Without discussing the character of the power exercised, recovery of consequential damages was sustained in condemnation actions against similar drainage districts in the following cases: Fort Worth Imp. Dist. No. 1 v. Weathered, 149 S. W., 550; Hopkins County Levee Imp. Dist. v. Hooten, 252 S. W., 325; Hopkins County Levee Imp. Dist. v. Smith, 243 S. W., 793; Matagorda Dr. Dist. No. 5 v. Borden, 195 S. W., 308; Fort Worth Imp. Dist. v. Fort Worth, 106 Texas, 148; Sanitary Dist. of Chicago v. C. & A. Ry. Co., 168 N. E., 312; People v. Chicago, 104 N. E., 31.

The right of way of a railroad company is protected by the Con-

stitution the same as though it were the private property of an individual. G. C. & S. F. Ry. Co. v. State, 120 S. W., 1028; Western Union Tel. Co. v. Penn. Ry. Co., 195 U. S., 540; L. & N. Ry. Co. v. Interstate Ry. Co., 62 S. E., 369.

Where the use to which a portion of a tract of land, taken under right of eminent domain is to be devoted, will result in injury and diminution in value to the remainder of the tract, the obligation to pay for the damages to such remainder is as imperative as the obligation to pay the value of the portion actually taken, and if defendant was entitled to be awarded the value of the portion of the right of way to be actually taken for the construction of the levee, then such right carried with it the right to compensation for the damage that will result from such construction. St. Louis, Ark. & Tex. Ry. Co. v. Henderson, 86 Texas, 307.

Evidence introduced by both parties showing that the construction of the levee as proposed, will make it necessary to destroy and remove 625 feet of embankment and for changes to be made in the elevation of the track and river bridge and for the construction of additional trestling, all at a necessary cost of many thousands of dollars, shown by defendant's evidence to be $275,000, such destruction and changes to be made on the right of way adjacent to the portion sought to be condemned, and showing that the necessity of such expenditures will depreciate the value of the right of way and roadbed thereon to the amount of such necessary expense, such cost and expense was a proper item for the jury to consider in estimating the damage to the portion of the right of way not to be taken. Parker County v. Jackson, 23 S. W., 924; City of Rosebud v. Vitek, 210 S. W., 728; W. F. & N. W. Ry. Co. v. Wyrick, 147 S. W., 730; Wise County v. McClain, 100 S. W., 802.

There being no allegation or evidence that the present conditions are injurious to the public health, morals or safety and no evidence that the public will be benefited other than by having 1,800 acres of privately owned land made susceptible of cultivation and its value to its owners increased from $15.00 per acre to $85.00 an acre, while there is sufficient evidence to warrant a finding by the jury that the construction of the levee would impose a loss of over $200,000 upon defendant, almost double the increase of value to the owners, the infliction of such a loss for such a slight public benefit is an unreasonable exercise of the police power, unless payment of adequate compensation for the loss be required. H. & T. C. Ry. Co. v. City of Dallas, 98 Texas, 396.

*W. P. Dumas,* for defendant in error.

There is nothing in the statute requiring the concurrence of all three of the commissioners in condemnation proceedings before a legal assessment can be made, and decision rendered thereon. Lewis' Sutherland Statutory Construction, Vol. 2, Sec. 363; City of Austin v. Nalle, 85 Texas, 520, 22 S. W., 668; Long v. State, 127 S. W., 557; Dalton v. Allen, 215 S. W., 439; St. Louis S. W. Ry Co. v. Tod, 94 Texas, 632, 64 S. W., 778; Stone v. Hill, 72 Texas, 540, 10 S. W., 665; City of Austin v. Cahill, 99 Texas, 172, 88 S. W., 553; State v. DeGress, 72 Texas, 242, 11 S. W., 1029; Miller v. Tod, 95 Texas, 404, 67 S. W., 483.

There was but one issue in this case. That issue was clearly and fully submitted to the jury in the charge of the court. The plaintiff in error was not entitled to have the case submitted to the jury upon other issues. Chicago, B. & Q. Ry. Co. v. Board of Supervisors, 182 Fed., 291; Mason City & Ft. D. R. R. Co. v. Board of Supervisors, 121 N. W., 39; Chicago & N. W. Ry. Co. v. Drainage Dist. No. 5, 121 N. W., 193; Gaertner v. Stolle, 238 S. W., 252; Cushman v. Masterson, 64 S. W., 1031; Oaks v. West, 64 S. W., 1033; Haile v. Johnson, 133 S. W., 1088.

The authorities are uniform in holding that in a case of this character the imposition upon the railroad company of the cost and expense, if any, of building or repairing its dump, track, roadbed, or bridges, which may be made necessary for the work of reclaiming and protecting overflowed lands, does not amount to a taking of, or legal recoverable damages to, property for public use. Chicago, B. & Q. Ry. Co. v. Drainage Commissioners, 200 U. S., 561, 26 Sup. Ct., 341; Chicago, B. & Q. Ry. Co. v. Board of Supervisors, 182 Fed., 291, 104 C. C. A., 573; St. Louis S. W. Ry. Co. v. Miller Levee Dist. No. 2, 197 Fed., 815; Lake Shore & Mich. Sou. Ry. Co. v. Clough, 242 U. S., 375, 37 Sup. Ct., 144.

As a governmental agency and body corporate, defendant in error is clothed with power and authority to condemn "any and all lands" (except lands and property used for cemetery purposes) that are "within, bordering upon, adjacent, or opposite" to the defendant in error, necessary for constructing its system of levees and carrying out the plan of reclamation approved by the State Reclamation Engineer. Acts 1915, Reg. Ses., Chap. 146, Sec. 38; Texas M. R. R. Co. v. Kaufman County Imp. Dist. No. 1, 175 S. W., 482.

The provision prohibiting more than one subject does not apply where two matters are incorporated in the Act which are germane

to each other and parts of the same general subject matter. Mc-Means v. Finley, 88 Texas, 521, 32 S. W., 524; Breen v. State, 44 Texas, 305; Ex Parte White, 198 S. W., 589; Stone v. Brown, 54 Texas, 341.

In the case of Lake Shore & Mich. Sou. Ry. Co. v. Clough, 242 U. S., 375, 37 Sup. Ct., 144, it was held that the expense of taking out existing piers and abutments of a railway bridge and erecting new ones, made necessary by the deepening of a channel in the carrying out of a proposed drainage system to be constructed in the public interest, may be cast upon the railroad company, without denying the due process of law guaranteed by the Fourteenth Amendment to the United States Constitution.

Mr. Justice PIERSON delivered the opinion of the court.

This case was referred to Section B of the Commission of Appeals, and an opinion prepared by Judge Ocie Speer was reported to the court. The case, however, was withdrawn from the Commission and taken under submission by the court.

We have given the issues involved very careful study. After thoroughly reviewing the fundamental principles of law and the authorities, we are clearly of the opinion that Judge Speer's opinion in all respects correctly states the law and should rule the case. His opinion is as follows:

"The east fork of the Trinity River runs in a southerly direction across Rockwall County, and at a certain point is crossed by the line of the Missouri-Kansas-Texas Railroad Company. The right of way has been owned and the line of road constructed and maintained a great many years. At the point where the railroad crosses the river, both above and below, on the west side, there is considerable bottom which has always been subject to frequent overflows. In times of such overflow the water has spread out over this bottom and the present structures of bridge across the river and embankment across the bottom have been adequate and altogether sufficient for the company's use.

"Rockwall County Levee Improvement District No. 3 is a levee improvement district organized under Chap. 146, Acts of Thirty-fourth Legislature, 1915 (Vernon's Sayles' Civ. Stats., Supp., 1918, Arts. 5530–5584d), with the rights and powers of a conservation and reclamation district under Vernon's Texas Civ. Stats., 1922 Supp., Arts. 5107–1 to 5107–276.

"The district as organized embraces about 1,800 acres of land lying in the bottom upon the west side of the river immediately above

and below the railroad company's tracks. The river forms the east boundary line of the district. This suit was instituted by the levee district for the condemnation of a section of the railroad company's right of way for the purpose of constructing a levee across the right of way, the levee to extend north and south approximately parallel with the river at a mean average distance of about 600 feet inland from the river, the levee to be about four miles long and to cross the railroad right of way 1,100 feet west of the west bank of the river, the purpose of the levee being, of course, to protect that portion of the district lying west thereof from the overflow waters of the river.

"Upon the proper petition therefor, commissioners to appraise damages were duly appointed. Two of these commissioners awarded damages to the railroad company in the sum of $600, and one in the sum of $600 actual and $35,000 exemplary damages. Upon objection to the decision of the commissioners by the company, the case was entered upon the civil docket of the county court, where the railroad company filed its motion asking the court to reject the assessment and decision made by the commissioners. This motion being refused, the railroad company filed an answer, and the cause was tried before a jury, resulting in a judgment for the levee district condemning the land and in favor of the railroad company in the sum of $2,104 damages. The cause was appealed to the Court of Civil Appeals by the railroad company, where the judgment was affirmed (266 S. W., 163), and the questions hereinafter discussed are before us upon writ of error to the judgment of that court.

"We fully agree with the Court of Civil Appeals that the decision of the commissioners appointed to assess the damages sustained by plaintiff in error was valid though not unanimous. The case was one for trial in the County Court under the statutes.

"After the introduction of the evidence the defendant presented to the court its written request that the cause be submitted to the jury upon special issues as provided by the statute. (Vernon's Sayles' Ann. Civ. Stats., Art. 1984a). At the same time the defendant also presented certain special issues which it requested the court to submit to the jury. The trial court, conceiving that there was but one issue for the jury to consider, refused the request for the submission of special issues, and submitted the case upon a general charge. The Court of Civil Appeals, agreeing with the trial court as to the singleness of the issue of fact to be tried, refused to reverse the case upon this point, and held the error to be harmless. For this

holding the judgments of both courts must be reversed, and for reasons hereinafter stated the cause must be remanded for another trial.

"Art. 1984a of the statute provides:

" 'In all jury cases the court, upon request of either party, shall submit the cause upon the special issues raised by the pleadings and the evidence in the case.  *  *  *  '

"This statute has been held to be mandatory, and if the case is one for the jury at all, it must upon request by either party be submitted upon special issues rather than a general charge.  Galveston, etc., Co. v. Jackson, 92 Texas, 638; Guffey, etc., Co. v. Dinwiddie, 168 S. W., 439; Gordon Jones, etc., Co. v. Lopez, 172 S. W., 987; Shaw v. Garrison, 174 S. W., 942; Dorsey v. Cogdell, 210 S. W., 303; Watson v. Corley, 226 S. W., 481.

"That the case is one which could properly be submitted upon special issues cannot be doubted.  There was at least the issue of damages to that portion of the right of way to be occupied by the levee company's dike, actually submitted to the jury; but the singleness or multiplicity of issues involved has nothing to do with the question.  The statute makes no such distinction.

"Of course it would follow from the above that we are of the opinion the defendant's request for a summary instruction was properly refused.  This request was predicated upon the theory that the levee district as organized has no authority to condemn property for the purpose of protecting low lands from overflow, as is evidently contemplated by the levee district in this case, but that in effect its powers of condemnation were limited to the construction of levees along the banks of rivers, creeks, or streams, to prevent the overflow of such rivers, creeks, or streams: in other words, to improve or conserve the stream.  We approve the holding of the Court of Civil Appeals upon its interpretation of the statute.  Obviously the legislature had in mind, at least in part if not wholly, the protection by this method of valuable agricultural lands that otherwise would be of small value or wholly worthless; and especially is this view strengthened when it is remembered such levee districts are given the rights and powers of conservation and reclamation districts also, for the mere asking.

"It also follows that we rule against plaintiff in error on its contention that the Act of April 1, 1915, being Chap. 146, General Laws Thirty-fourth Legislature, 229, is void as being in contravention of

the Constitution, which forbids the inclusion of two subjects in a bill.

"If that bill and its title do contain two subjects, they certainly are germane to each other, and therefore the matter is not within the condemnation of the Constitution. McMeans v. Finley, 88 Texas, 521, 32 S. W., 524; Breen v. Texas & P. Ry. Co., 44 Texas, 305; Ex Parte White, 82 Texas Crim., 85, 198 S. W., 583. The supposed vice in the Act, and in its title as well, is that it embraces two subjects, to-wit: Authority of the Commissioners Court to create and establish levee improvement districts with certain enumerated powers, and also validating bonds issued by districts theretofore organized.

"The point most strongly urged by plaintiff in error arises out of its contention that if the levee district is authorized by law to condemn its property and thereby take, injure, or destroy the same, such district will be liable to the company in damages, not only for the value of that portion of its right of way actually taken, but for the other damages that might be done to its property as well. The point is thoroughly presented in every conceivable way, and is accentuated by the court's charge, as follows:

" 'Gentlemen of the Jury: The court charges you that the burden of proof is upon the plaintiff to show by a preponderance of the evidence that the use of a part of the railroad right of way for levee will not destroy or materially injure its use as an integral part of the railway, or be detrimental to the public.

" 'The court further charges you that under the law the reclamation and protection of lands subject to overflow by reason of storm and flood waters in this State is a public right, and that a levee improvement district, created for such object or purpose is a governmental agency, and, as such, has power and authority to acquire an easement or right of way to, over, and through any and all lands, waters or lands under waters, private or public (except land and property used for cemetery purposes), within, bordering upon, adjacent, or opposite to such district, necessary for making, constructing, and maintaining all levees and other improvements for the improvement of a river, or creek, or stream within or bordering upon such district to prevent overflows thereof, and in the event of the condemnation, or the taking, damaging, or destroying of property for such purposes, the levee improvement district shall pay to the owner thereof adequate compensation for the property taken, damaged, or destroyed.

" 'The court further charges you that the measure of damages in a case of this character is the damages sustained by reason of the interference of the use by the defendant railroad company of its right of way by building the levee over and across a part of such right of way, and the value of such portion of the railroad right of way as will be actually taken for the construction of the levee.

" 'The court further charges you that the imposition upon the defendant railroad company of the cost and expense, if any, of building or rebuilding its dump, track, roadbed or bridges, which may be made necessary by the work of reclaiming and protecting the over-flowed lands in Rockwall County Levee Improvement District No. 3, as proposed to be done by the duly authorized officers and agents of said levee district, does not amount to a taking of, or legally recoverable damages to, property for public use, and you will in this case consider no such damages, if any is shown.

" 'Excluding such damages, if any, as is not recoverable under the foregoing instruction, you will consider and say by your verdict what damages, if any, the defendant railroad company will suffer by the condemnation and use of its railway dump as it now exists, for the levee purposes as sought in this action, and the value of such portion of the railroad right of way as will be actually taken for the construction of the plaintiff's levee.  *  *  *  '

"The Levee Act of 1915 confers upon districts such as defendant in error the right of eminent domain, and provides that:

" 'In the event of the condemnation, or the taking, damaging, or destroying of any property for such purposes, the improvement district shall pay to the owner thereof adequate compensation for the property taken, damaged or destroyed.  *  *  *

" 'All condemnation proceedings or suits in the exercise of eminent domain under this Act shall be instituted under the direction of the district supervisors, and in the name of the levee improvement district, and all suits or other proceedings for such purpose and for the assessing of damages, and all procedure with reference to condemnation, the assessment of and estimating of damages, payment, appeal, the entering upon the property pending the appeal, etc., shall be in conformity with the statutes of this State for the condemning and acquiring of right of way by railroad companies, and all such compensation and damages adjudicated in such condemnation proceedings and all damages which may be done to the property of any person or corporation in the construction and maintenance of levees or other improvements under the provision of this Act shall be paid out

of any funds or properties of said levee improvement district. * * * .' Vernon's Texas Civ. Stats., 1918 Supp., Art. 5567.

"There is no controversy but that the district is liable for compensation for the property actually taken by condemnation, but the difficulty arises at the point of holding it liable for damages to, or destruction of, property not actually taken. This damage is frequently referred to as 'consequential' damages, but that term has been used so indiscriminately and in such contradictory senses as to become meaningless. It is sometimes used to denote damages recoverable by law, to distinguish them from the compensation allowed for property actually taken, and arising from injury to other property not actually taken. In this sense such damages under our Constitution and statutes are recoverable. Again, however, the term is used to designate those injuries which the law will not redress in any event. By whatever term they may be designated, we hold that under our Constitution 'no person's property shall be taken, damaged, or destroyed for, or applied to public use, without adequate compensation being made. * * * ' Art. 1, Sec. 17, and under the statutes under consideration, the defendant in error is liable and must pay compensation for all property of another taken, damaged, or destroyed by it in the exercise of its functions as a district under the statutes. Fort Worth, etc., District v. Fort Worth, 106 Texas, 148; Dallas County, etc., District v. Ayers, 246 S. W., 1112; Fort Worth, etc., District v. Weathered, 149 S. W., 550; Hopkins County, etc., District v. Hooten, 252 S. W., 325; Hopkins County, etc., District v. Smith, 243 S. W., 793; Matagorda, etc., District v. Bordon, 195 S. W., 308.

"It can make no difference, we think, within the meaning of this rule, whether the property taken, damaged or destroyed be the property of an individual or of a railway corporation. There is nothing in the Constitution or statutes indicating such a distinction, nor does anything occur to us upon which such a distinction could be soundly based.

"The trial court and the Court of Civil Appeals have held that the items of expenditure and cost by the railroad company which will be made necessary to adapt its roadbed to the changed condition after the construction of the levees contemplated, are not recoverable in this proceeding; and with this conclusion we agree—not because damages within the meaning of the Constitution and statutes suffered by the railroad company are not recoverable in the proceeding to condemn its property—for they are, but because, in the view we

take of the case, the items claimed by the railroad company as the basis for its damages in this case—that is, those items of the cost and expense necessary to accommodate the road to the levee plan— are not elements of damages at all. Damage as such, within the contemplation of the principle under consideration, necessarily means compensation to the owner for an injury to his property, and this postulates that the owner has such a fixed right in the property as to insist upon its maintenance in its then condition. One can not be damaged in a legal sense through the destruction of property which he has no legal right to own, keep, or maintain. In such case no legal right is invaded, and this is the very essence of damage.

"Under our statutes (Vernon's Sayles' Texas Civ. Stats., Art. 7485), railroad corporations are given the right to construct their roads across, along, or upon any stream of water, water course, street, highway, etc.; but the corporation is further required to restore the stream, water course, street, highway, or the like, to such state as not to unnecessarily impair its usefulness. It is uniformly held, we believe, that this duty upon the part of the railroad company is a continuing one. It is an incident to its right to occupy its right of way and conduct its business. Such duty may be, and often is, enforced specifically through appropriate orders of a court. The government, through any proper instrument of its machinery, in the exercise of its authority, commonly denominated the police power, has ample right to enforce compliance with this duty. Houston, etc., Co. v. City of Dallas, 98 Texas, 396, 84 S. W., 648; Chicago, B. & Q. Ry. Co. v. Chicago, 166 U. S., 226, 41 L. Ed., 979. The duty of the railroad company in this respect is most aptly stated in Chicago, B. & Q. Ry. Co. v. Board, 182 Fed., 291, 31 L. R. A. (N. S.), 1117, quoted by the Court of Civil Appeals, as follows:

" 'The duty of the railroad to conform its roadbed to the requirement of such public easements as highways and ditches is an incident of its right to construct and maintain its road. The whole subject has been clearly defined in the long line of cases in which railroads have been charged with the expense not only of building fences along their right of way, and cattle guards, but also with the expense of constructing crossings over new highways, both public and private, and also with the expense of constructing bridges and viaducts so as to obviate crossings at grade, whenever the public welfare required such a change. It has been uniformly contended by railroads that such expenses constituted a taking of their property for public use without just compensation, a deprivation of their

property without due process of law, and a denial to them of the equal protection of the law. While there has been some conflict in the decisions, the overwhelming weight of authority at the present time is that such requirements are just, and are not subject to either of the constitutional objections mentioned.'

"In like manner, and to precisely the same extent, the railroad is under the duty of conforming its roadbed to the 'lay of the land' with respect to streams and surface waters. Vernon's Sayles' Texas Civ. Stats., 1914, Art. 6495. It is not sufficient that the construction be adequate at the time the road is built, but if by reason of changed conditions through clearing and cultivating of lands (Texas & P. Ry. Co. v. Whitaker, 36 Texas Civ. App., 571, 82 S. W., 1051, writ ref.), drainage, or other lawful changes, resulting in the necessity of improving or even rebuilding its road, the burden and expense of doing so belongs to the company as an incident to its right to operate at the place at all. The proper drainage or other conservation of farm lands is not only lawful, but is as much a matter of public benefit and general welfare as the ordinary cultivation of the soil. Each is the exercise of a right always to be anticipated, and each may so affect the 'lay of the land' as to be reckoned with in railroad building. This additional expense, in whatsoever form it is required, whether in strengthened dumps, elevated tracks, or enlarged culverts or bridges, can not be said to be 'damages' to the company's property, but rather is to be considered primarily a charge to the company as part of the construction and maintenance of its road, and as being anticipated in its original acceptance of its franchise. In their last analysis, expenses such as those being considered here are in no just legal sense damages as the result of injury to the railroad company's property. It is upon this principle the long line of well considered cases—of which Chicago, B. & Q. Ry. Co. v. Illinois, 200 U. S., 561, 50 L. Ed., 596, is to be regarded as leading—really rests. (See authorities therein cited.) So that the trial court and the Court of Civil Appeals committed no error in holding that these items of expense for the improvement or reconstruction of the company's road were not to be considered as damages in the condemnation case. The point we have just discussed is pertinent only to the proceedings as a condemnation case.

"But the rights of the district as an arm of the State, with the powers of eminent domain, are not limited to those merely incident to the powers of eminent domain, but it may as well exercise the powers of government, in so far as applicable, commonly referred

to as the police power of the State. It is perhaps now thoroughly settled that this police power not only embraces regulations designed to promote public health, public morals, or public safety, but embraces as well regulations designed to promote public convenience or general prosperity. Chicago, etc., Co. v. Illinois, supra. Of course compensation has never been a condition of the exercise of the police powers of a State, for the rights of the public outweigh the rights of the individual, and the latter must yield when necessary and proper. Houston, etc., Co. v. City of Dallas, supra. But even this greater power of State is not itself without limitations, for no exigency of the moment can justify the legislature, or any other instrumentality of government, in depriving the citizen of his property without due course of law, or depriving him of that equal protection of the law, vouchsafed to him by the fundamental law of the land. This limitation applies as well to legislative acts as to administrative, or judicial proceedings. Speaking to the very point, the Supreme Court in Houston, etc., Co. v. City of Dallas, 98 Texas, 396, 84 S. W., 648, says:

" 'The power is not an arbitrary one, but has its limitations. It is commensurate with, but does not not exceed, the duty to provide for the real needs of the people in their health, safety, comfort, and convenience, as consistently as may be with private property rights. As those needs are extensive, various and indefinite, the power to deal with them is likewise broad, indefinite, and impracticable of precise definition or limitation. But as the citizen can not be deprived of his property without due process of law, and as a privation by force of the police power fulfills this requirement only when the power is exercised for the purpose of accomplishing, and in a manner appropriate to the accomplishment of, the purpose for which it exists, it may often become necessary for courts, having proper regard to the constitutional safeguard referred to in favor of the citizen, to inquire as to the existence of the facts upon which a given exercise of the power rests, and into the manner of its exercise, and if there has been an invasion of property rights under the guise of this power, without justifying occasion, or in any unreasonable, arbitrary, or oppressive way, to give to the injured party that protection which the Constitution secures. It is therefore not true as urged by plaintiff, that the judgment of the legislative body concludes all inquiry as to the existence of facts essential to support the assertion of such a power as that now in question. If this were true, it would always be within

legislative power to disregard the constitutional provisions giving protection to the individual.'

"That case involved the right of the City of Dallas to raise the grades of public streets crossed by the railroad company, and to compel the railroad company to reconstruct its track to accommodate the new grades, as against the company's contention that the exercise of such powers under the circumstances was unreasonable. To the same effect are the following authorities: Nash Hardware Co. v. Morris, 105 Texas, 217; St. Louis, etc., Co. v. Griffin, 106 Texas, 477; City of New Braunfels v. Waldschmidt, 109 Texas, 302; Railroad Commission of Texas v. Weld & Neville, 96 Texas, 394; Houston, etc., Co. v. City of Dallas, 98 Texas, 396, 84 S. W., 648; Chicago, etc., Co. v. Illinois, 200 U. S., 561, 50 L. Ed., 596. So that, it is now thoroughly well settled by the decisions of the highest courts in the land that municipal ordinances, and even legislative enactments, undertaking to regulate useful business enterprises, are subject to investigation in the courts, with the view of determining whether or not the ordinance or act is the lawful exercise of the police power; for no legislative body, or other tribunal as to that, can, under the guise of enforcing police regulations, arbitrarily interfere with the constitutional property rights of a single individual. The legislature may, in the exercise of a reasonable discretion for the promotion of the public welfare, make laws that operate to the individual hurt, but this right always is subject to judicial review, and the law itself is void if it contravenes the superior right of an individual whom it injures. If such be the rule with respect to legislative acts, how much greater will it apply to an attempted act, such as the proposed structure in this case, where not specifically authorized by legislative act, but rather under the general governmental power to act for the public welfare, even to the detriment and injury of an individual.,

"To be justified under the authority of the police power, the thing complained of, whether a legislative act, judicial decree, or proceeding whatsoever, must be reasonable under all the circumstances. Otherwise it may be an unlawful interference with the property and rights of the individual whom it hurts. Ordinarily this question of reasonableness is one of law; perhaps it is always such. In instances of legislative acts or ordinances, the question is determinable upon the face of the law; whereas in cases like the present, where the contention arises over the unreasonableness of a particular act of injury or destruction, the question of law will of course be dependent upon the facts as they are found to exist; and where the case is tried by

a jury that tribunal determines the facts.   Houston, etc., Co. v. City of Dallas, 98 Texas, 396, 84 S. W., 648.   We have no doubt the defendant in error has the power, in the exercise of police powers of State, to do what it has undertaken to do in this case, provided under all the circumstances to do so is reasonable.   The plaintiff in error specifically pleaded that it was unreasonable and would deprive it of its property without due process of law and otherwise deny to it the equal protection of law in violation of the constitutional provisions. The issue was also raised by the evidence.   There is evidence from which it can be found that the benefit to the public by way of enhanced values of the land to be protected will be even less than the costs to plaintiff in error of reconstructing its road to accommodate the increased volume of water within the confines of the proposed levees.   This consideration should enter in the determination of the districts's rights to construct the proposed levees.   We would not be justified in reversing the case to enable the plaintiff in error to have this issue tried out, but since the case must be reversed and remanded, we have taken occasion to call attention to this issue, presented both by the pleadings and the evidence, but in nowise submitted to the jury or passed upon by the court.

"Indeed, the charge upon which the case was tried assumed everything in this respect against the plaintiff in error, and submitted only the issue of damages, thus holding in effect that defendant in error was within its legal rights, thereby ignoring entirely the defense of reasonableness above discussed.   It is true the charge instructed that the burden of proof was upon the plaintiff to show by a preponderance of the evidence that the use of a part of the railroad's right of way for levee would not destroy, or materially injure its use as an integral part of the railway, or be detrimental to the public.   But what use the jury were to make of this does not appear, since they were not permitted to pass upon such issue; their only opportunity under the charge as above indicated being to assess the damages.

"We will not undertake to formulate issues or direct as to instructions, but in some proper trial the facts should be so found as to enable the court to determine therefrom whether or not the construction of the levees contemplated by the defendant in error is a reasonable exercise of the police powers inherent in it.   This will involve the consideration of the value of the benefits to the public (and the company is a part of the public as much so as the district, for the purpose of this consideration), and likewise of the expenses and costs imposed upon the plaintiff in error.   The evidence in the pres-

ent case differs widely, some of it tending to show that the structures will not seriously interfere with the use by the company of its road, and that the principal expense will be the supplying and using of sand bags as an improvised levee across the track in case of unusual high water, while the other evidence tends to show that if the project is carried out it will involve the expenditure by the company of $275,000, exceeding by far the value of all the lands in the district in their improved state. Upon the submission it was facetiously suggested that the road had been 'sandbagged' by the judgment. The inference is unpleasant. But it may come to the choice, literally, of whether the road will be 'sandbagged,' or the district 'water logged.'

"A loss, in one sense, to one or the other of the parties to this proceeding, is inevitable, and, as we understand the law, the solution of the question who shall bear the loss, will depend upon whether or not, under all the circumstances, the construction of the proposed levees by the defendant in error is a reasonable exercise of the police powers of State for the benefit of the public welfare.

"We are not to be understood as determining whether the issue immediately above discussed—that is, the authority of defendant in error under the police powers of State—may or may not be determined in this proceeding. What we have said, rather, is referable to the plaintiff in error's contention that the acts of the defendant in error amount to a violation of its constitutional rights to due process, and equal protection, of the law. We have discussed rights, and not remedial procedure. Whether or not the plan of defendant in error is the reasonable exercise of its police powers, and can be determined in some other appropriate proceeding, is not necessarily before us for decision, and is not decided. The case has been tried upon the theory that the sole issue to be determined is one of damages, and the plaintiff in error does not insist to the contrary, and this may be the correct theory of jurisdiction in this statutory proceeding; but what we have suggested with reference to the limitations upon the police power of defendant in error is sufficient to show that the plaintiff in error has not to this time been deprived of its property without due process of law, nor has it been denied the equal protection of the law. Its guaranties in this respect may be fully protected in some court of competent jurisdiction."

Accordingly, the judgments of both courts are reversed, and the cause is remanded to the trial court for another trial not inconsistent with this opinion.