## STATE v. SMITH.
### No. 1263.

Court of Civil Appeals of Texas. Waco.
March 5, 1932.

O. L. Mathews and T. L. Tyson, both of Franklin, for the State.

Witt, Terrell & Witt, of Waco, and J. Felton Lane, of Hearne, for appellee.

**BARCUS, J.**

. The validity of the trial court's judgment in this case depends entirely upon whether the act passed by the Second Called Session of the Forty-Second Legislature in September, 1931 (chapter 2 [Vernon's Ann. Civ. St. arts. 165a–165m]), known as the law "regulating cotton cultivation," is constitutional. Section 1 of said act (Vernon's Ann. Civ. St. art. 165a) declares that the soil is one of the most valuable resources of the state; that the growing of cotton is an industry of first importance; that the preservation and restoration of the soil is essential to the welfare of the people; that the continuous growing of cotton on the land without rotation has caused serious deterioration of the soil and disastrous erosion of the land, the spread of root rot over a wide area, and the propagation of boll weevil, cotton fleas, and other harmful insects, and caused a deterioration of the quality and quantity of cotton raised; and that, in order to alleviate said evils and prevent their further increase, the law was enacted. Section 2 of the act (Vernon's Ann. Civ. St. art. 165b) makes it unlawful for any person to plant during the year 1932 any crop of cotton in excess of 30 per cent. of the area of land which was in cultivation in planted crops during the year 1931. Section 3 of the act (Vernon's Ann. Civ. St. art. 165c) makes it unlawful for any person to plant during the year 1933 any crop of cotton in excess of 30 per cent. of the area of land which was in cultivation in planted crops during the year 1932. Section 4 of the act (Vernon's Ann. Civ. St. art. 165d) makes it unlawful for any person to plant cotton on any land in 1933 which was planted in cotton in 1932. Section 5 of the act (Vernon's Ann. Civ. St. art. 165e) makes it unlawful for any person, after the year 1934, to plant cotton on the same land that had been planted in cotton the year preceding. Acting under the provisions of said act, this suit was instituted by the county attorney of Robertson county to enjoin appellee from planting in cotton during the year 1932 more than 30 per cent. of 286 acres of land which he owned and a 1,400-acre tract which he had leased.

Prior to January 3, 1932, the time the law in controversy took effect, appellee had rented the land which he owned as well as that which he had under lease to various and sundry tenants to be cultivated by said respective tenants largely in cotton. He, as landlord, was to furnish all teams and tools, and the tenants were to cultivate and harvest the cotton, the landlord receiving one-half and the tenants one-half of the amount raised. The record shows that approximately 35,000,-000 acres of land are in cultivation in Texas, about one-half thereof being annually planted to cotton; that a large portion of the land planted to cotton is unsuitable for profitably raising any other character of crop; that in about 176 of the 252 counties there has developed a disease known as root rot, which some years seriously affects the production of cotton; that root rot not only destroys cotton, but it also tends to destroy some five hundred other plants or crops; that many weeds which grow wild in Texas and some of the shrubbery and trees that grow in the forest produce or act as host for root rot; that root rot is not contagious, in that neither cotton nor cotton seed nor any other plant grown on soil affected with root rot will carry same from one locality to another, and the amount of damage it causes depends each year on the climatic conditions. During the year 1931 root rot caused very little damage to cotton in any portion of Texas, and most of the land that had been in cultivation continuously in cotton for twenty-five to fifty years made the largest crop in its history. The evidence shows that a failure to plant cotton will not eradicate root rot unless the land is kept perfectly clean of weeds and other plants that harbor or act as host for root rot. The trial court, after hearing the evidence, denied appellant's prayer for an injunction, and held the law unconstitutional.

Appellant seeks to uphold the law on two theories, first, that it is an act for the conservation of the soil, one of the natural resources of the state; and, second, that it is a proper police regulation. Appellee contends that the law is unconstitutional and therefore void because it violates section 1, Amendment 14 of the United States Constitution, and section 19, art. 1, of the Constitution of Texas, which provide that no law shall be passed which shall deprive any person of life, liberty, or property without due process of law, and because same violates section 10, art. 1, of the United States Constitution and section 16, art. 1, of the Constitution of Texas which provide that no law shall be passed that is retroactive in its nature and impairs the obligation of contracts. Appellee further contends that the law is unconstitutional in that it is not in fact either a conservation measure or a police regulation.

In 1917 our State Constitution was amended by adding section 59 (a) to article 16, which authorizes the Legislature to pass all laws that are appropriate for the conservation and development of all of the natural resources of the state. Unquestionably, we think the soil is one of the natural resources of the state, and, if it becomes necessary, we think the Legislature could enact such reasonable and appropriate laws as may be required for the preservation of the soil. The question as to whether said laws were reasonable and appropriate would be for judicial determination.

It is the well settled law that the Legislature under its general police power may enact such legislation not forbidden by its own or the Federal Constitution as to reasonably regulate the rights and duties of all persons and corporations within its jurisdiction which are necessary for the common good and general welfare of its citizenship. 6 R. C. L. 202. In determining the constitutionality of a police regulation, the rule is well stated in 12 C. J. 929, as follows:

"In order that a statute or ordinance may be sustained as an exercise of the police power, the courts must be able to see that the enactment has for its object the prevention of some offense or manifest evil or the preservation of the public health, safety; morals or general welfare, that there is some clear, real and substantial connection between the assumed purpose of the enactment and the actual provisions thereof."

Our courts, both federal and state, uniformly hold that the Legislature cannot, in the guise of a police regulation, declare that to be a nuisance which in fact is not a nuisance. Cooley's Constitutional Limitations (8th Ed.) p. 1327; Stockwell v. State, 110 Tex. 550, 221 S. W. 932, 12 A. L. R. 1116; Spann v. City of Dallas, 111 Tex. 350, 235 S. W. 513, 19 A. L. R. 1387; Crossman v. City of Galveston, 112 Tex. 303, 247 S. W. 810, 26 A. L. R. 1210. It is the well-settled law that a determination by the Legislature as to what is a proper exercise of the police power is not final and conclusive, but is subject to review and supervision by the courts. 6 R. C. L. 241; 9 Tex. Jur. 505, pars. 77, 78, and 80; 12 C. J. 932; Missouri K. & T. Ry. Co. v. Rockwall County Levee District, 117 Tex. 34, 297 S. W. 206, 211; Houston & T. C. R. v. City of Dallas, 98 Tex. 396, 84 S. W. 648, 70 L. R. A. 850; Stone v. Kendall (Tex. Civ. App.) 268 S. W. 759; City of Dallas v. Mitchell (Tex. Civ. App.) 245 S. W. 944 (error ref.); Yee Gee v. City and County of San Francisco (D. C.) 235 F. 757, 763; MacMillan v. Railroad Commission of Texas (D. C.) 51 F.(2d) 400.

The Legislature, under the law in controversy, has absolutely prohibited any person from planting more than 30 per cent. of the cultivated land under his control in cotton for any one year. Under the testimony, the effect of this law would, in a large portion of the cotton territory, absolutely destroy the value of the other 70 per cent. of the land because no other crop can be grown profitably thereon. This is a clear violation of that provision of the Constitution which forbids the taking of property without due process of law, since depriving a person of its use is the same as taking the property. No contention is made that the growing of cotton is inherently wrong or that it in any way affects the health or the morals of the state. The state contends that the planting and raising of cotton on land continuously has a tendency to destroy the fertility of the soil and cause root rot and thereby destroy the cotton plant. This contention is not borne out by the record. The record shows that a large portion of the land that has been planted in cotton consecutively for many years has no root rot, and that much of the best river bottom land specially adapted to raising cotton is not in any way subject to or infected by root rot. The record further shows that on the land where root rot exists many other plants and crops and many weeds that grow wild are as great producers of root rot as the cotton plant, and that failure to plant cotton will not eradicate root rot unless the land is kept absolutely clean of all weeds. The record shows that in the year 1931 the largest cotton crop in the history of the state was produced on land that had been for a half century consecutively planted to cotton. The evidence further shows that a part of the land being cultivated by appellee is not in any way affected by root rot.

Cooley's Constitutional Limitations (8th Ed) p. 1329, states: "The right of a citizen to pursue any of the ordinary vocations on his own property and with his own means, can neither be denied nor unduly abridged by the legislature, for the preservation of such right is the principal purpose of the Constitution itself. * * * Such pursuits as agriculture, merchandising, manufacturing and industrial trades cannot be dealt with at will by the legislature."

In Missouri K. & T. Ry. Co. v. Rockwall County Levee District, supra, our Supreme Court stated: "No exigency of the moment can justify the Legislature * * * in depriving the citizen of his property without due course of law, or depriving him of that equal protection of the law, vouchsafed to him by the fundamental law of the land."

Again, in the same opinion, the court stated: "The Legislature may, in the exercise of a reasonable discretion for the promotion of the public welfare, make laws that operate to the individual hurt, but this right always is subject to judicial review, and the

law itself is void if it contravenes the superior right of an individual whom it injures."

In 9 Tex. Jur. 508, the rule is correctly stated thus: "A law to be justified under the authority of the police power must be reasonable in the light of all the circumstances, otherwise it may be an unlawful interference with the property and rights of the individual whom it hurts."

In Yee Gee v. City and County of San Francisco, supra, the federal court, in holding unconstitutional a law which prohibited laundrymen to work between the hours of 6 p. m. and 7 a. m., stated: "Is such a regulation within the rule of reason which must govern the courts in determining its validity? * * * Another principle involved in the exercise of the police power, which it is hardly necessary to state, is that a mere legislative declaration that a business or occupation, harmless and innocuous in itself, is inimical to the public interest, either as a whole or as to some feature of its conduct, cannot make it so, unless by reason of surrounding conditions the declaration can be said to accord with the fact as based upon common observation and human experience. The Legislature cannot by its mere ipse dixit make that a guilty thing which is intrinsically an innocent one. It would be idle, for instance, for the Legislature to declare that the occupation of farming or the work of the horticulturist was in its nature inimical to the public interest, and to undertake to regulate the hours of the day in which the work of those great industries should be prosecuted."

Under the facts in this case we think the act in controversy is unreasonable and violates both the Federal and State Constitutions, in that, without due process of law, it deprives the owner or tiller of the soil of his inalienable right to plant any amount of cotton which he deems wise. Said law cannot, in our opinion, be upheld either as a proper conservation of the soil or as a reasonable police regulation.

We think the law in question is unconstitutional for the further reason that it violates the provisions of section 10, article 1, of the United States Constitution, and section 16, article 1, of the Constitution of Texas, in that it deprives the owner of the land, as well as the tenant, of the right to contract with each other as to what he shall or shall not plant. In Rumbo v. Winterrowd

(Tex. Civ. App.) 228 S. W. 258, 261, in a well-considered opinion, the court, in holding unconstitutional the act of the Legislature which prohibited a landlord from renting his farm land for more than one-third and one-fourth of the farm products produced, we think correctly stated: "The amendment is a restriction upon, an impairment of, the right of contract between owners of agricultural land and those who seek to rent it." This same doctrine can with equal force be applied to the law in question, and for the same reason be held unconstitutional, in that it abridges the right of citizens to make contracts that are not against the health, peace, morals, education, or good order of the people.

As applied to appellee, we think the law in controversy is further unconstitutional in that it violates section 16, article 1, of the Constitution of Texas, which prohibits the passage of any retroactive law which impairs contracts already made. The testimony in this case shows that appellee, prior to the time the law in question took effect, had entered into a written contract whereby he had leased approximately 1,400 acres of land under an agreement to plant the larger portion thereof in cotton, and in turn appellee had made contracts with a large number of tenants under the terms of which he had rented to them certain portions of said land to be cultivated chiefly in cotton for the year 1932. If appellee is enjoined from planting or having planted said land in cotton for the year 1932, said contracts will, without any due process of law, become unenforceable, and appellee as well as his tenants will be deprived of the benefits accruing to them under and by virtue of said contracts.

Appellant's contention that the law in controversy will conserve the soil by preventing its constant erosion is, we think, not borne out by the record. The testimony shows that a large part of the land which appellee proposes to put in cotton for 1932 is low bottom land which is not subject to erosion; that a large portion of the cultivated lands in Texas is subject to erosion from rains regardless of whether it is planted to cotton or not. The testimony shows that the most successful way to prevent the erosion of land is by terracing, and that this can be done when the land is planted in cotton. We have examined all of appellant's assignments of error, and same are overruled.

The judgment of the trial court is affirmed.