**MOSHEIM et al. v. ROLLINS et al.**

No. 9546.

Court of Civil Appeals of Texas. San Antonio.

Jan. 9, 1935.

Rehearing Denied Feb. 27, 1935.

Knetsch, Stevenson & Knetsch and Dibrell, Mosheim & Campbell, all of Seguin, for appellants.

James V. Allred, T. S. Christopher, and J. A. Stanford, Jr., all of Austin, for appellees.

MURRAY, Justice.

Miss Elsie Mosheim, acting individually and in the capacity of independent executrix of the estate of Emil Mosheim, deceased, together with twenty other plaintiffs, instituted this suit in the district court of Guadalupe county against J. G. Rollins, district engineer of the Fifteenth road district, and J. K. Jones, supervisor of the maintenance of highways in Guadalupe county, seeking an injunction restraining said Rollins and Jones from planting Bermuda grass in the right of way of state designated highway No. 3–A, and also seeking a mandatory injunction requiring them to dig up such Bermuda grass as had been theretofore planted in such highway.

The trial court sustained a plea to the jurisdiction, based upon the proposition that this was in effect a suit against the state without previous legislative consent. The cause was accordingly dismissed, and the plaintiffs below present this appeal.

Appellants alleged in their petition that they owned land on both sides of highway No. 3–A, and that Bermuda grass was being planted in the right of way of said highway up to and touching their property lines; that this grass would eventually spread onto and ruin their lands, which were valuable farming lands.

They further allege that they had originally owned the land now occupied by highway No. 3–A, and that the fee-simple title of the right of way had not been conveyed to the state, but only an easement for road purposes.

They further alleged facts showing their common interest in the suit, which would justify them in joining in one suit in order to avoid a multiplicity of suits.

Appellants further allege that their observation of the maintenance of public roads in Guadalupe county and in Bexar county leads them to believe that there are more effective means of preventing the soil upon the highway from washing than by planting Bermuda grass along the highway, to the great menace and damage of the owners of the land through which the highway is placed. They further allege that the grass was planted in a surreptitious manner and that a fraud was practiced upon them. There are many other allegations which are not necessary to this statement.

Appellees Rollins and Jones answered, setting up the fact that they were the mere agents and representatives of the state highway commission, and that they had not acted in any individual capacity, but only for and on behalf of the state highway commission, and that such commission acts for and on behalf of the state of Texas. They asked for the dismissal of the suit for want of jurisdiction, contending that it was in effect a suit against the state without legislative consent.

■ Appellants, in their brief, freely recognize the principle that as a general rule the state cannot be sued without legislative consent previously obtained, but attempt to justify this suit under one or all of the three following exceptions to the general rule, set forth in appellants' brief as follows:

"First, officers committing a tort or abusing discretionary powers to the injury of property rights of individuals, may be sued without Legislative consent as any other individual;

"Second, officers acting in violation of law may be sued without Legislative consent;

"Third, officers acting under color of an unconstitutional law to the injury of property rights of individuals may be sued without Legislative consent."

We will discuss these three exceptions in the order they are stated.

■ The first exception raises the question as to whether or not appellants' petition is sufficient to allege that the two officers were committing a tort or abusing discretionary powers to the injury of the property rights of appellants. Appellants concede that an action against a state agency or instrumentality is an action against the state, and that a state officer or agent exercising a governmental function ordinarily cannot be sued, but appellants' contention is that Rollins and Jones are abusing their discretion and are committing a tort against appellants, and therefore they may be sued as individuals.

■■ It is true that, if an officer is guilty of a gross abuse of discretion, or is about to commit a tort, he may be enjoined as an individual, without violating the rule that the state cannot be sued without its consent. Let us see if the allegations in appellants' petition are sufficient to show the commission of a tort or gross abuse of discretion. The allegations are that this district engineer and this maintainer of highways in Guadalupe county are planting Bermuda grass along the right of way of the state highway in such a manner that it will eventually spread upon the cultivated lands of appellants, and ruin such land for the purposes for which it is now being used. This court judicially knows that the planting of Bermuda grass is valuable for the preservation of embankments and that it is often employed for this purpose by the highway commission and railroad companies in this state. Gulf, C. & S. F. Railway Co. v. Oakes, 94 Tex. 155, 58 S. W. 999, 52 L. R. A. 293, 86 Am. St. Rep. 835.

■ In the absence of a statute prohibiting the planting of Bermuda grass, no cause of action can arise from the planting of Bermuda grass which will eventually spread upon adjacent land by wind, water flowing in its natural course, or by other natural causes. While we have a statute in this state with reference to Johnson grass and Russian thistles (Vernon's Ann. Civ. St. art. 6401), we have no such statute as to Bermuda grass. Vance v. Southern Kansas Railway of Texas (Tex. Civ. App.) 152 S. W. 743; Bangle v. M., K. & T. Ry. Co. of Texas (Tex. Civ. App.) 140 S. W. 374.

■■ Appellants, realizing this hiatus in their case, have attempted to supply the missing link by citing House Concurrent Resolution No. 15, passed by the Forty-Second Legislature, at its Second Called Session, 1931 (Acts 1931, 2d Called Sess., p. 76), and contending that it should be given the force and effect of a statute. This resolution was passed in aid of what was known as the Conservation Act (Vernon's Ann. Civ. St. arts. 165a–165m). This act prohibited the planting of cotton on the same land during consecutive years. In State v. Smith (Tex. Civ. App.) 47 S.W.(2d) 642, the Conservation Act was declared unconstitutional, and House Concurrent Resolution No. 15 fell with the act it was so closely interwoven with and incident to.

However, if we be mistaken in this conclusion, this resolution cannot be given the effect of a law. Our Constitution (article 3, § 30)

provides that "no law shall be passed, except by bill. * * *" City of San Antonio v. Micklejohn, 89 Tex. 79, 33 S. W. 735.

This resolution contained the following paragraph: "Resolved by the House of Representatives, the Senate concurring, That said corporations use the necessary care and diligence in keeping their right of ways clear of any grasses, weeds or other plants that tend to spread, to the end that the increased burdens incident to the enforcement of this Conservation Act shall not add unnecessary cost to the farmer in his efforts to protect and conserve the potential productivity of his soil."

This resolution cannot be regarded as a law prohibiting the highway commission from planting or permitting Bermuda grass to grow along the state highways.

It is clear that appellants' contention No. 2, that these officers were acting in violation of law, cannot be sustained.

Appellants' third contention is that, if the law does authorize the highway commission, through its employees, to plant Bermuda grass upon the right of ways of state highways, then any such law is unconstitutional as being in conflict with section 17, art. 1, of the state Constitution, which provides, among other things, that no person's property shall be taken, damaged, or destroyed for or applied to public use without adequate compensation.

We do not sustain this contention. Article 6673, R. S. 1925, provides, among other things, that the commission is authorized to take over and maintain the various state highways in Texas, and, in accomplishing this duty imposed upon it, the judgment of the highway commission, and not of some one else, is supreme. Johnson v. Ferguson (Tex. Civ. App.) 55 S.W.(2d) 153. The fact that there may be better ways of maintaining the highways is unimportant.

The planting of Bermuda grass along the right of way being legal (Gulf, C. & S. F. Railway Co. v. Oakes, supra), the fact that it may spread by natural means to adjacent lands does not render such act the taking, or damaging, of property in violation of section 17, art. 1, of the Constitution. It was said in the above cause that the grass, when it spreads upon and takes root in adjoining soil, becomes the property of the owner thereof, and he may do with it as he will, and hence there is no direct violation of his absolute right to the sole use and possession of his property.

The commission is within its rights in planting the grass up to and touching appellants' property lines. As said in 29 Corpus Juris, 545: "The general easement in the public, acquired by the location of a highway, extends to the limits of the highway as located, and consists in the privilege of passage, with the powers and privileges which are incident to such a right, such as the right to construct and maintain a safe and convenient roadway, * * * make reservoirs, and do any other acts which tend to facilitate travel, and are in furtherance of the purpose for which the easement was acquired."

There is no question but that the planting of Bermuda grass along a right of way is a proper manner of maintaining a highway and that it will facilitate travel. The fact that it may spread from natural causes upon adjoining land simply does not give rise to any cause of action in this state.

Appellants, in their petition, seek an injunction restraining the admitted employees of the highway commission from maintaining a state highway in a manner permitted by law. Such a suit is in effect a suit against the state, and cannot be maintained without the consent of the state itself.

The trial judge properly sustained the plea to the jurisdiction.

The judgment of dismissal will be affirmed.

### Supplemental Opinion.

Chief Justice BICKETT has filed herein what he terms a dissenting opinion, but which the majority of the court do not regard as being in conflict with their opinion.

The gist of the minority opinion seems to be stated in the following sentence: "The badge of authority is of no consequence whatsoever if the act violates the constitutional or legal right of the citizen."

It is the position of the majority of this court that appellants' petition does not allege that these representatives and agents of the state highway commission were doing any acts which violated either the constitutional or legal rights of appellants, and we regard this position as not being in conflict with the conclusions of law expressed in the minority opinion.

BICKETT, Chief Justice (dissenting).

For the reasons shown below, I respectfully dissent from the majority decision, which I regard as being fundamentally erroneous and involving dangerous consequences.

This is an appeal from the order of the district court sustaining a plea to the jurisdiction, based on the theory that the suit was in

effect one against the state without its consent. The defendants, a road district engineer and a county highway maintenance supervisor, employees of the state highway commission, contend that they are the state, and are therefore immune from suit, so far as the asserted cause of action is concerned. The legal sufficiency of the cause of action is not involved, because the demurrer was not passed upon by the trial court and there was no trial upon the merits. The only action of the trial court was to sustain the plea to the jurisdiction. The sole question, therefore, before this court is whether these employees are so clothed with the attributes of sovereignty as to be no longer subject to the courts of the land for an alleged violation of the legal right of the citizen.

Elsie Mosheim, executrix of the will of Emil Mosheim, deceased, and others, plaintiffs below, alleged in their petition against J. G. Rollins, district engineer of the Fifteenth road district, and J. K. Jones, supervisor of maintenance of Highways in Guadalupe county, defendants, in substance: That plaintiffs were the owners of separate tracts of land abutting upon a certain highway known as No. 3–A, for which an easement for a right of way 120 feet in width was conveyed by plaintiffs, respectively, to the state of Texas; that these adjoining lands were valuable farm lands in a high state of cultivation and were planted to cotton, corn, and other agricultural products, as they had been for many years past; that defendants were wrongfully planting Bermuda grass upon the right of way contiguous to the cultivated lands of plaintiffs; that this grass, planted and watered as it was, would inevitably spread onto the lands of plaintiffs; that this grass is a noxious and infectious one that spreads rapidly from its seed, roots, and branches; that, once having started growing, it is almost incapable of eradication and is ruinous to farm or cultivated land; and that the acts of defendants were wanton, malicious, and illegal. The prayer of the petition was for an injunction to restrain the commission of the alleged wrongful acts.

Defendants, in their plea to the jurisdiction of the court, alleged that they were employees of the state highway commission of Texas; that the commission was an administrative branch of the state government; that defendants acted as agents of the commission; that the suit was in effect one against the state; and that plaintiffs had not obtained legislative consent to maintain the suit.

The suit of a citizen seeking to enjoin one who is an officer or agent of the state from the commission of an act that would unlawfully deprive the citizen of his property or injure him in the free enjoyment of it is not a suit against the state. No such public servant, even though purporting so to act under the authority of the state, can claim the immunity of the state from suit and thereby evade the jurisdiction of the courts. There are innumerable instances where the courts have taken jurisdiction of suits of individuals seeking protection against unlawful aggression and invasion of rights of personal security and of private property by public servants. The badge of authority is of no consequence whatsoever if the act violates the constitutional or legal right of the citizen. The law upon the point is too well settled to require elaboration. Stanley v. Schwalby, 85 Tex. 348, 349, 19 S. W. 264; Conley v. Daughters of the Republic, 106 Tex. 80, 156 S. W. 197, 157 S. W. 937; Conley v. Texas Division of United Daughters of Confederacy (Tex. Civ. App.) 164 S. W. 24; State v. Epperson, 121 Tex. 80, 42 S.W.(2d) 228; Whatley v. Patten, 10 Tex. Civ. App. 77, 31 S. W. 60; Imperial Sugar Co. v. Cabell (Tex. Civ. App.) 179 S. W. 83; United States v. Lee, 106 U. S. 196, 1 S. Ct. 240, 261, 27 L. Ed. 171; Hamill v. Hawks (C. C. A.) 58 F.(2d) 41; Sterling v. Constantin, 287 U. S. 378, 53 S. Ct. 190, 77 L. Ed. 375.

The Supreme Court of the United States in United States v. Lee, supra, in 1882, vindicated the right of the son of General Robert E. Lee to maintain an action against the defendants, who were officers of the United States acting under orders of the President and the Secretary of War, but who were, as their predecessors had been for twenty years, naked trespassers upon the Arlington estate. In the course of the opinion, one of the greatest of that court, it was said:

"No man in this country is so high that he is above the law. No officer of the law may set that law at defiance with impunity. All the officers of the government, from the highest to the lowest, are creatures of the law and are bound to obey it.

"It is the only supreme power in our system of government, and every man who by accepting office participates in its functions is only the more strongly bound to submit to that supremacy, and to observe the limitations which it imposes upon the exercise of the authority which it gives.

"Courts of justice are established, not only to decide upon the controverted rights of the

citizens as against each other, but also upon rights in controversy between them and the government, and the docket of this court is crowded with controversies of the latter class.

"Shall it be said, in the face of all this, and of the acknowledged right of the judiciary to decide in proper cases, statutes which have been passed by both branches of congress and approved by the president to be unconstitutional, that the courts cannot give remedy when the citizen has been deprived of his property by force, his estate seized and converted to the use of the government without any lawful authority, without any process of law, and without any compensation, because the president has ordered it and his officers are in possession?

"If such be the law of this country, it sanctions a tyranny which has no existence in the monarchies of Europe, nor in any other government which has a just claim to well-regulated liberty and the protection of personal rights.

"It cannot be, then, that when in a suit between two citizens for the ownership of real estate, one of them has established his right to the possession of the property according to all the forms of judicial procedure, and by the verdict of a jury and the judgment of the court, the wrongful possessor can say successfully to the court, 'Stop, here; I hold by order of the president, and the progress of justice must be stayed.' That, though the nature of the controversy is one peculiarly appropriate to the judicial function, though the United States is no party to the suit, though one of the three great branches of the government to which by the constitution this duty has been assigned has declared its judgment after a fair trial, the unsuccessful party can interpose an absolute veto upon that judgment by the production of an order of the secretary of war, which that officer had no more authority to make than the humblest private citizen."

The majority opinion appears to rest upon the conclusion that the petition fails to state a good cause of action and is subject to a general demurrer. That question is not before this court, for, as stated, this appeal is from a judgment sustaining a plea to the jurisdiction upon the ground that it is a suit against the state. The issue before this court is as to who is sued, not as to whether a good cause of action is asserted. The premature decision of the latter question has the immediate effect of finally disposing of the suit without even giving the plaintiffs an opportunity to amend their petition, if they should so desire, as they would unquestionably be entitled to do under the usual procedure.

Infinitely more serious and dangerous, however, is the effect of the majority decision to invest subordinate state employees, who are not even of the rank of public officers, with a sanctity and immunity from the judicial process. This is at war with the spirit and genius of our people, as reflected in our constitutional history and in both state and Federal Constitutions. Presently, under such a precedent, the courts, the last refuge of the citizen, may be unavailing as against the public officer aggressor. For there the complaint of the citizen will be parried with the weapon of tyrants, "L'état, c'est moi" (I am the state). That pronouncement of Louis XIV, first uttered before a judge who dared refer to "the state and the king," put an end to justice as between the king and his minions and the people. The inevitable result was the Reign of Terror. I fear my brethren have sown the dragon's teeth that will bring forth a harvest of woe. I can do no more than by this dissent to sound the tocsin.

Therefore, in my opinion, the trial court erred in holding that this was a suit against the state and in sustaining the plea to the jurisdiction, and the judgment should be reversed and the cause remanded.