JAMES G. SWISHER V. JOHN J. GRUMBLES.

Where the field-notes of a league of land called to commence at a point on the west margin of the Colorado river, and to run up the river with the meanders thereof to the mouth of Spring creek, thence N. 50 deg. W. with Spring creek, 500 varas ; thence S. 30 deg. W. 6100 varas ; thence S. 60 deg. E. 4019 varas ; thence N. 30 deg. E. 6200 to the place of beginning ; and the grantee conveyed "all the upper half of a league of land," "the headright league of "said Decker, lying on the west side of the Colorado river," "excepting two "hundred acres on the back end of said half league from the river," "the "said upper half of said league to include half of the front of said league, on "the river, and back for quantity ; the lower line of said upper half running "back from the river parallel to the upper line of said league ; so as to in-"clude the whole upper half, except two hundred acres to be taken off the "back end of said upper half ;" and it was proved that Spring creek from its mouth to the point where the line of the league left it, was a navigable stream within the meaning of the law regulating the surveys of land ; it was held that Spring creek was a part of the river front, within the terms of the deed ; that the line of partition should be a continuous straight line parallel with the upper and lower lines of the league ; and that its initial point should be the center of the river front, (including Spring creek as aforesaid,) unless such division should be so disproportionate, as to repel the supposition that the party could have intended, or would have assented to it.

It would seem that where a tract of land is a trapezoid, fronting on a naviga-ble stream and running back by parallel lines, and the grantee sells one-half thereof to be divided by " a line from the river parallel with the side lines," the half so sold " to include half of the front on the river," a compliance with all of said calls being impossible, the call for half of the front on the river must yield to the other two calls for half the tract, and for a division line parallel with the two sides ; unless there be other terms, or perhaps extrane-ous circumstances in proof, showing that such was not the intention of the parties.

See this case as to the mode of ascertaining the center of a river front, under a call in a deed for half the river front of a given survey.

All the various rules of construction, which have, from time to time, been adopted and acted upon, are designed for the purpose of arriving at and carrying out the intention of the contracting parties. Where that is mani-fest, all else must yield to and be governed by it.

Appeal from Travis. Tried below before the Hon. John Hancock.

Suit by appellant against appellee, February 3d, 1854. The petition alleged that plaintiff was the owner of the land on the west margin of the Colorado river, immediately opposite the foot of Congress Avenue in the City of Austin ; that he had determined to establish a ferry at said point, and had leased from the City of Austin the privilege of landing his ferry boats at the foot of said Avenue ; that he had already been at considerable expense in cutting down the bank and procuring a ferry boat ; and that the defendant had entered upon plaintiff's land upon the west side of said river, with force and arms, and had erected a rail fence " from a point on the " water's edge upon said river opposite said city above said " avenue and running down said river to the water's edge near " the lower edge of said Avenue, completely shutting up and " excluding the approach of said ferry," &c. Alleged damages and prayed an injunction, which was granted.

The defendant answered alleging that the land was his own.

The land was part of the headright league of Isaac Decker, the field-notes of which are given in a deed from said Decker to Daniel Browning, for one-half of his said headright, as follows :

Republic of Texas, County of Bastrop.—This indenture, made this the 11th day of July, 1839, in the year of our Lord one thousand eight hundred and thirty-nine, between Isaac Decker of the county of Harris, in said Republic, and Daniel Browning of the county of Fayette, in said Republic witnesseth : That whereas, heretofore to-wit : on the 18th day of June, 1838, the said Decker, for and in consideration of the sum of two thousand and twenty-two dollars, bargained and sold to said Browning, his heirs and assigns, all the upper half of a league of land, adjoining the league No. (20) twenty, hereinafter designated more particularly, excepting two hundred acres on the back of said half from the river. And

whereas the said Browning hath this day paid to me in hand the last payment due to me for said land, as will appear by my bond for title, given to the said Browning on the day and year above written, to-wit: one thousand dollars in specie currency. Now therefore the said Decker, having received full and entire satisfaction, as aforesaid, and in pursuance of his obligation in said bond specified, and in consideration of the said sum of money hereby acknowledged to have been received, as aforesaid, from said Browning, the said Decker hath this day transferred, alienated, remised, released and conveyed, and, by these presents, doth transfer, aliene, remise, release and convey unto the said Daniel Browning, his heirs and assigns, the tract or parcel of land aforesaid, to-wit: the upper half of the headright league of said Decker, lying on the west side of the Colorado river, adjoining league No. (20) twenty, and north-west of a ten league grant; thence up the river, with the meanders thereof, to the entrance of Spring creek; thence North 50 deg. West, with Spring creek, 500 varas to a stake from which a Spanish oak, twenty-four inches in diameter, bears N. 33 deg. E. 0 varas; a Spanish oak eight inches in diameter bears S. 28 deg. W., 3 varas; thence S. 30 deg. W., 6100 varas to a stake and south-west corner of league No. 20 from which a live-oak, twelve inches in diameter, bears S. 28 deg. W.; a live-oak, 8 inches in diameter, bears S. 60 deg. E. no varas: thence S. 60 deg. E. 700 varas, to Williamson's creek, running S. W.; 1800 varas to Williamson's creek, running S. E.; 2650 varas, to Williamson's creek, running S. W.; 3100 varas, to Williamson's creek, running S. E.; 3500 varas, to Williamson's creek, running S. W.; 4019 varas to a stake and south-east corner of league number twenty, from which a live-oak six inches in diameter bears N. 15 deg. E. 90 varas; a live-oak eight inches in diameter bears S. 55 deg. E. 105 varas; thence N. 30 deg. E. 6200 varas to the river and place of beginning, which said league was granted to said Decker, as a settler in Milam's colony, by a deed dated 17th

day of March, 1835, and signed by Talbot Chambers, Commissioner of said colony, and now on file in the General Land Office of said Republic, a copy of which accompanies herewith. The said upper half of said league to include half the front of said league on the river, and back for quantity; the lower line of said upper half, running back from the river parallel to the upper line of said league, so as to include the whole upper half, except two hundred acres to be taken off on the back end of said upper half; containing two thousand and twenty-two acres more or less. To have and to hold said tract or parcel of land to him the said Browning, his heirs and assigns, with all the appurtenances thereunto belonging, to his and their own proper use, benefit and behoof in fee simple.

And the said Decker hereby declares said bond to be free from all mortgage and incumbrance whatsoever, and as such, he sells the same in good faith, hereby relinquishing all right, title and dominion in and over the same, and fully vesting said Browning, his heirs and assigns, with full power to use, enjoy and dispose of the said land, as his or their own property, acquired by a just and legitimate title. And the said Decker binds himself, his heirs, executors and administrators, the title of said land to the said Browning, his heirs and assigns, forever to warrant and defend.

The plaintiff claimed, by regular chain of conveyances from Decker, part of the lower half of the league, with a call for the division line between the upper and lower half leagues, for his upper boundary; and the defendant claimed. by regular chain of conveyances from Browning, a part (four acres, more or less) of the upper half league, with a call for the same division line for his lower boundary.

In 1853 four persons, among whom was the plaintiff, but not the defendant, representing themselves as the owners of a portion of said league, (and it appeared that they owned nearly all of it,) had authorized H. L. Upshur, then District Surveyor of Travis District, to survey and subdivide the said tract of

land between them according to their several rights, binding themselves to abide by the division so to be made. Upshur commenced at the beginning corner and meandered the Colorado river as follows :

West, 101 vs.; N. 60½, W. 170 vs.; N. 53¼ W. 110 vs.; N. 56½ W. 275 vs.; N. 3 E. 81 vs.; N. 55¾ W. 405 vs.; N. 18 W. 445 vs.; N. 19 E. 120 vs.; N. 14 W. 72 vs.; N. 30 W. 385 vs.; N. 5 W. 93 vs.; N. 10 E. 145 vs.; N. 63¾ W. 370 vs.; N. 86 W. 645 vs.; N. 62 W. 410 vs.; N. 69¼ W. 200 vs.; N. 64 W. 310 vs.; to the mouth of Spring creek ; thence up Spring creek S. 62 W. 570 vs. to the original corner of said tract of land.

And measuring on he found the original S. W. corner at 6500 varas, instead of 6100 as in the original field-notes. The S. E. corner he found at 4100 varas, instead of 4019 ; and the place of beginning at 6400 varas, instead of 6100 ; making the survey contain 4933½ acres, being 504½ acres more than a league.

Upshur then commenced at the lower corner again and followed the meanders of the river up 2594 varas to a stake about 25 varas below the City ferry. From this point he run a line S. 30 deg. W. (parallel with the sides of the leagues,) to the back line, 7343 varas ; thence with the back line to the S. E. corner 2117 varas ; giving to the lower half 2466¾, precisely half of the said survey. The balance of this survey need not be stated. It was in evidence, but not claimed to be binding upon the defendant, as if he had been a party thereto.

At the first Term of Court, a survey was ordered, the parties to submit their field-notes to the Surveyor, and the cause was continued. This order did not give any directions as to the manner of making the survey.

Afterwards another order was made, directing the Surveyor to survey the league of land granted to Isaac Decker and situated on the west bank of Colorado river, opposite the city of Austin, in such manner as to ascertain the center of the front of said league on the river Colorado ; thence from said center running a line parallel with the general course of Spring creek,

from the point where the west line of said league touches the same to its junction with the Colorado river, thence through said league to the back line on a course parallel with the west line of said league. You will also require said Surveyor to ascertain the center of the river front of said league, having regard to that portion of said league, lying on Spring creek, as constituting a part of said river front and run a line from the center so ascertained through to the back line of said league on a course parallel with the west line from the point where the same leaves Spring creek. You will likewise require said Surveyor to report the locality of the centres of the front of said league, as hereinbefore designated, with reference to their bearing on known or natural objects, lying contiguous thereto, and to make full report of his proceedings, under this order at the next Term of the Travis District Court.

In pursuance of the first order of survey, L. H. Luckett Deputy Surveyor of Travis District, returned a survey as follows: Commenced at the lower corner of the river and meandered the front on the Colorado river, making more lines than Upshur had done in his survey in 1853, measuring in all 4283 varas to the mouth of Spring creek; up Spring creek 570 varas; to the S. W. corner 6540 varas; to the S. E. corner 4055 varas; to the place of beginning 6430 varas; containing 4987 acres; then commenced at the lower corner on the river and followed the meanders up 2139 varas to a stake on the bank of the river, center of the front on the Colorado river; thence run a line S. 30 deg. W. (parallel with the sides) 7290 varas to the back line; thence with the back line to the S. E. corner 1820 varas; thence to place of beginning, including 2130 4-10 acres, leaving 2856 6-10 acres in balance of the survey; commenced again at the stake in the center of the front on the Colorado river, and run S. 33 deg. 20 min. W. 7520 varas to the back line (notice that this line is not parallel with the sides); thence with the back line 2382 varas to the S. E. corner; and thence to the lower corner on the river;

giving equal quantities of land on each side of this division line.

In pursuance of the second order of survey, H. L. Upshur, District Surveyor, returned a trigonometrical survey, from notes taken by him in 1853, with a diagram of the river front, as follows: A, the beginning corner of the original survey; B, mouth of Spring creek; the course from A to B is N. 51 deg. 20 min. W., and distance in a direct line 3818 varas; d the center of that line; d E a perpendicular line to A B; E the point at which said perpendicular strikes the river.

C the original corner on Spring creek; B C the general course of Spring creek; E f a line similar in course and distance to B C; and E f g a division line parallel to the general course of Spring creek to f; and thence to the back line of the league parallel with the side lines, being the first line described in the order of survey.

The course from A to C is N. 58 deg. 36 min. W., and the distance 4676 varas; h the center of that line; h I a perpendicular line to A C; and I the point where said perpendicular strikes the river.

S the S. W. corner; Q the S. E. corner; I m parallel to C s and A Q is the other line described in the order of survey.

K l the dividing line of the league as run by myself in 1853.

The point E is about 275 varas below Swisher's ferry, by the meanders of the river; the point I is about 125 varas below Grumbles' ferry; (called City ferry in his division in 1853; hence the point I was about 100 varas below the point K; and K l being 7343 varas long, if I m were taken for the division line, the lower half would contain two hundred and sixty acres more than the upper; one hundred and thirty more than half of the survey.—Reps.)

Plaintiff proved that Spring creek, at the point where the west line of the league touches the same, is from forty to sixty yards wide, and has an average width of from fifty to eighty yards from that point to its junction with the Colorado river.

On this evidence the case was submitted to the Judge without a jury ; and judgment was rendered for the defendant, establishing as the proper division line, the line run by Luckett from the center of the front on the Colorado river, S. 33 deg. 20 min. W.

*Oldham & Terrell,* for appellant. The construction contended for by the defendant, cannot be sustained by any rule of law.

If we commence the division line at the point E (see diagram), and run a line back parallel to the upper line, it would defeat the manifest intention of the parties to the deed, which was to convey half the league except two hundred acres, and would include several hundred acres more than half of the league. But for this line the defendant did not contend in the Court below, and perhaps will not in this Court.

If we commence at the point E and run a line to the back line of the league, so as to include the proper quantity of land as decreed by the Court below, another and governing call of the deed will be disregarded, which requires the line, to be run parallel to the upper line ; thus making the quantity expressed by the words " to include half of the front of said " league on the river," control and govern course and distance, to which it must always yield.

If we commence at the point E and run to the point f, parallel with Spring creek, and then back to the back line, we defeat two manifest objects of the deed, to-wit : first, less than half of the league would be contained above the line, and more than half below : and second, the league would be divided by two lines instead of one—one from E to f, and the other from f to g. The variation of the first being 62 deg. W. and of the second 30 deg. W.

But if we take the line I m, all the calls of the deed can be reconciled ; first, by regarding that portion which fronts on Spring creek, (which it will be seen by the proof is a naviga-'

ble stream,) as a part of the front on the river, we give to the upper half, "one half of the front of said league on "the river;" second, we divide the league into two equal quantities; and third, the dividing line is parallel to the upper line.

The judgment of the Court below is manifestly in violation of all the rules prescribed for the construction of deeds. It commences at the point E on the river and runs back to the back line for quantity, in disregard of the specific call in the deed, that the division line must be parallel to the upper; thus making quantity control the clear call for course. Quantity must yield to course and distance. (Hubert v. Bartlett, 9 Tex. R. 97.)

We contend that the call for the half of the front on the river should no more control, than the call for half the league; nor should it have as much force, for it is the evident intention to convey only half of the league. This was the principal object, (Urquhart v. Burleson, 6 Tex. R. 502,) and therefore that construction must be adopted which is most consistent with the intention apparent on the face of the deed.

*Hamilton & Chandler*, for appellee, From the plat of the league it will be seen the upper side line strikes Spring creek before reaching the river, and runs down this creek to the river. It is insisted by the appellant that Spring creek constitutes a part of "the front on the river" according to the intent of the language above quoted.

The appellee insists that "half the front on the river" means the Colorado river, and that Spring creek is a part of the upper side line.

There is little left for argument or authority. The meaning of the words "the river" must determine the question. That the Colorado river was meant is absolutely certain.

The two Reports made by the Surveyor and Deputy Surveyor of the District exhibit the points at which the partition

line, as claimed by the parties respectively, would touch the river, and the difference is precisely the difference in the front of the whole tract counting Spring creek as a part of the front and its front without Spring creek.

The Court below was of opinion that the partition line, according to the obvious meaning of the deed from Decker to Browning, must commence at the center of the front on the Colorado river, which gave to the appellee the land in controversy. Judgment was rendered accordingly, and in this we insist there was no error.

WHEELER, J. It is agreed on all hands, that the decision of this case depends on the true construction of the deed of the 11th of July, 1839, from Decker, the original grantee of the league of land, of which the land in controversy is a part, to Browning, for the upper half of the league. The deed purports to convey " all the upper half of a league of land," " the headright league of the said Decker, lying on the west side of Colorado river," " hereinafter designated more particularly, excepting two hundred acres on the back end of said half from the river." It then gives the field notes of the survey of the league, with a more particular description of the grant, and concludes by describing the half of it which it was intended to convey, thus : " The said upper half of said league to include half of the front of said league, on the river, and back for quantity ; the lower line of said upper half running back from the river parallel to the upper line of said league ; so as to include the whole upper half, except two hundred acres to be taken off the back end of said upper half."

What was in the mind of the grantor in using this language ? What were the leading objects he had in view ? These, if they can be discerned, are the true criterion by which to interpret the grant. First, it was, to convey half the league ; and second, it was to be the upper half. These were the primary objects ; and then, as to the manner of making the division be-

tween himself and his grantee, it was to be so made as to give them an equal river front, and an equal quantity of land, These are the leading objects, manifest upon the face of the deed. Proceeding to the manner of dividing the land, it is said, " the said upper half of the league is to include half of the front of said league, on the river, and back for quantity ; the lower line of said upper half running back from the river parallel to the upper line of said league ;" the particular objects called for being, the river front of the league, and the line running back, parallel with the upper line of the league. These are to be the boundaries of the half league conveyed ; and both are to be observed and maintained, if it be possible to give effect to both, consistently with the primary object of the grantor, to convey to the grantee the upper half of the league of land. For, " it is an acknowledged rule, in construing a grant, that all of its parts must be taken together, and supported, if it can be done. (Urquhart v. Burleson, 6 Tex. R. 511.)

It is to be observed, that, in this deed for the division and conveyance of half of the league, there is a constant reference to the boundaries of the league, thus to be divided ; and in these there were four leading objects. These were an upper line, a lower line, a back line and a front or river boundary. These four leading objects appear to have been constantly in the mind of the grantor. They were constantly present to his mind, as the boundaries of the league which he proposed to divide between himself and his grantee. Spring creek does not appear ever to have occurred to his mind, as a distinct object of boundary. It is in fact, no part of the upper line, but is a part of the boundary of the front of the league, viewed in reference to its general configuration and boandaries, and as spoken of in contradistinction to the back line, and as distinguished from the upper and lower lines of the league ; as it is apparent its boundaries were present in the mind of the grantor. We cannot suppose—there is nothing in the deed to

warrant the supposition,—that the mouth of Spring creek was to be taken to be the terminus of the front boundary of the league. The contrary is apparent from several considerations, some of which are so prominent that it is impossible to disregard them. And first, in speaking of boundaries of the league, reference is constantly made to the leading objects before indicated, e. g. the land is described as lying on the west side of and upon the Colorado river ; and in reference to the river, as having its front upon it ; and an upper, a lower, and a back line. These, and none other, are the objects of boundary referred to by the grantor, outside of the field notes of the survey.— The front of the league, and the river, are constantly referred to as one and the same boundary. Thus, in the reservation out of the grant, of two hundred acres, it is said to be " on the back end of said half from the river," and the " back end of said upper half," which is said to front " on the river ;" and the conveyance is of " the upper half of said league, to include half of the front of said league, on the river," constantly speaking of the league as an area having four sides, and the river as its front, in contradistinction to its back " end" line, or side. But for the expression " on the river," in its connexion, in the clause last above referred to, there never could have been any difficulty or doubt, as to what was meant by the front of the league, or that it included, as well that part of it which is upon Spring creek, as upon the river proper. But the expression is evidently used there, as in other parts of the deed, merely as descriptive of one of the sides, or four principal boundaries of the league. Again, in the original survey, Spring creek is no part of any line of the league, though it is a boundary. The line from the mouth of Spring creek " South 50 deg. W. with Spring creek 500 varas" to the point where the upper line of the league intersects Spring creek, is indicative merely of the general course of the creek, but the creek, and not this line, is the boundary. It is to be borne in mind that where the upper line of the league approaches the creek, and

thence down to the bank of the river, the creek is of such width that the line could not cross it ; being deemed by the law, a navigable stream. Had it been a narrow stream, the upper line of the survey would have been continued across it in a right line to the river. Another evidence that it was considered, in making the survey, as a part of the river front, is, that the lower line of the survey is a right line from the south-east corner of the league, to the river ; making the width of the league on the river proper, less than it might otherwise have been. Moreover, it is evident that a dividing line, as required by the deed, " running back from the river parallel to the upper line of said league," cannot be parallel to Spring creek. So that any other construction than that which we have adopted would render this, which is the most definite, explicit and certain call in describing what shall be adopted as boundary in dividing the league, impossible, without wholly disregarding the other leading objects of the grant. And, accordingly, this call was disregarded in the decree of the Court. The dividing line adopted by the decree would change the form and configuration of the several moieties, from that of the league of which they are constituent parts ; whereas, it is evident, the intention was that those should be preserved, in making the division. It departs, moreover, from the first principle in the construction of grants and contracts, to which we have adverted, that all the parts must be taken together and supported if it can be done. The construction we have adopted ; that is, of considering Spring creek a part of the river front, or front boundary of the league, will give effect to all the calls of the deed ; and cause them more nearly to harmonize, than any other which can be adopted ; and we cannot doubt that it more nearly accords with, and effectuates the real intention of the grantor, than any other. All the calls will harmonize perfectly in every respect, except that the upper half will have more land than the grantor undertook to convey. But that must be deemed a subordinate consid-

Swisher v. Grumbles.

eration, unless there had been such a disproportion as to repel the supposition that the grantor could have intended or would have assented to it. There is no such disproportion, adopting the line run by the surveyor, Upshur, in establishing the dividing line, at the instance of the other parties in interest, holding under the grantor and grantee in the deed of 1839. We think he adopted the true method of making the division. It gives effect to every part of the deed ; renders all the calls consistent; and is the only method which can be adopted, looking to the intention of the grantor ; which, when it can be ascertained from the grant itself, must govern.

All the various rules of construction which have, from time to time, been adopted and acted upon, are designed for the purpose of arriving at and carrying out the intention of the contracting parties. Where that is manifest, all else must yield to and be governed by it. We think it so in this case ; and in carrying it into effect, there is no departure from any established rule of construction. On the contrary, every rule applicable to the subject is observed.

We are of opinion that the judgment be reversed, and that judgment be here rendered for the appellant in accordance with this Opinion.

## DECREE.

This cause came on to be heard on the transcript of the Record from the District Court of Travis county, and was argued by counsel, and in consideration whereof, it is the opinion of this Court, that there was error in the Judgment and Decree of the said District Court. It is ordered adjudged and decreed that the same is hereby reversed ; and this Court proceeding to render such Judgment and Decree herein as the said District Court should have rendered, and it appearing to the Court here that the true line of partition dividing the said headright league of Isaac Decker, according to the calls con-

tained in the deed of said Decker to Browning of the 11th of July, 1839, is a line commencing on the Colorado river at a point equi-distant from the upper and lower lines of said league,* Spring creek being regarded as a part of the river front, and not a part of the upper and side line of said league, and running back parallel with the upper line of said league to the back line thereof; and it further appearing that the said partition being so established and run, the ferry of said appellant will be upon the land claimed by him in his petition, and not upon the lands claimed by the said appellee. It is therefore ordered, adjudged and decreed by this Court, that the dividing line run as aforesaid, is the true partition line of said league as aforesaid, and that the Injunction originally granted by the Judge of the District Court of Travis county, enjoining and restraining the said appellee from obstructing or interfering with the ferry privileges and enjoyment thereof by said appellant, be re-instated, and made perpetual, and that said appellant do have and recover his costs in the District and Supreme Courts.

---

* The decree does not appear to conform to the Opinion. The Opinion would seem to prefer the line K l run by Mr. Upshur in 1853, by which the tract was divided into two equal portions ; the decree recognizes the line I m (about 100 varas below) as the true line. Grumbles' four acres only extended thirty yards from the river ; and either line established Swisher's title to the land opposite the foot of Congress Avenue."—REPS.