**GUELKER et al.**

v.

**HIDALGO COUNTY WATER IMPROVE-
MENT DIST. NO. 6.**

No. 12639.

Court of Civil Appeals of Texas.

San Antonio.

May 26, 1954.

Rehearing Denied June 23, 1954.

Willis Perkin, Aldrich & McDonald, Oliver C. Aldrich, Hall, Rawlins & Hall, Ralph Rawlins, Kelly, Looney, McLean & Littleton, B. R. Stewart, and Ralph L. Alexander, Edinburg, for appellants.

Smith & Hubbard, Edinburg, for appellee.

W. O. MURRAY, Chief Justice.

This suit was instituted by Hidalgo County Water Improvement District Number Six, originally as thirteen separate suits, against certain individuals,[1] seeking temporary injunctions, and on final hearing permanent injunctions against these individuals restraining them from using water out of certain drainage ditches located within the territorial boundaries of the Donna Irrigation District, Hidalgo

1. Willie F. Guelker, Joe Holmes, J. H. Sanders, Enrique Maldonado, R. Lee Anderson, Victor Brown, J. W. Wallace, Sr., Willard U. Wallace, J. W. Wallace, Jr., Jack O. Wallace, Frank L. Clifton, R. O. Rumfield, Rafael Acosta, Joe E. Tipton and Mrs. Joe E. Tipton, Clarence Snyder, Carl Gerber and B. C. Scott.

County Number One, hereinafter called Donna District. These suits were consolidated by agreement and tried as one suit. The defendants were either landowners or tenants of landowners within the Donna District and were using the water, which they were pumping from these drainage ditches, upon land within the Donna District. The trial court granted a temporary injunction without hearing evidence and on appeal to this Court that judgment was reversed for such failure to first hear evidence. Anderson v. Hidalgo County Water Improvement District, Tex.Civ. App., 251 S.W.2d 761.

The present trial was to a jury and the verdict was largely in favor of the defendants, but the trial court rendered judgment non obstante veredicto and granted a permanent injunction against most of the defendants, restraining them from pumping water from these drainage ditches. There was also a judgment for damages. From that judgment the defendants who were enjoined have prosecuted this appeal.

Appellee, Hidalgo County Water Improvement District Number Six, did not request any special issues which were refused by the court, so the judgment must be sustained, if at all, upon the undisputed evidence and the jury's answer to Special Issue No. 10, an issue answered by the jury in appellee's favor.

Appellee claimed the exclusive right to use the water found in the drainage ditches within the territorial boundaries of the Donna District and the outlet drainage ditch which lead from the northeast boundary of the Donna District to the Hidalgo County Floodway, by reason of the provisions of two contracts, both executed simultaneously on October 15, 1927, one between Donna District and Hidalgo County Water Improvement District Number Two, hereinafter called San Juan District, and the other between Donna District and J. C. Engelman, Jr. Appellee is now the successor and assignee of all rights and privileges acquired by J. C. Engelman, Jr., under this latter contract.

By the first contract Donna District agreed to dig and maintain a sufficient drainage ditch to connect up with the drainage system of the San Juan District and to carry off all the drainage waters from that district. In this connection, San Juan District agreed to pay to Donna District the sum of $20,000 and to convey and sell to it all the water that entered the Donna District from the drainage system of the San Juan District. The second contract provided in part that Engelman would secure a right of way for an outlet drainage ditch across land largely within the Engelman Water District, leading from the northeast boundary of the Donna District to the Hidalgo County Floodway, and to pay a certain portion of the cost of digging and constructing this outlet drainage ditch. In consideration of the obligations assumed by Engelman, Donna District agreed to sell to Engelman all the water which entered and flowed in its drainage system, whether it came from the San Juan District or the Donna District. Donna District further agreed not to build any obstruction in any part of its drainage system, and not to divert or permit to be diverted any water from its drainage system which would naturally enter and flow in the outlet drainage ditch. However, there was a qualification to this stipulation, which, among other things, stated that the provision was not to be construed in such a way as to prevent Donna District from improving its irrigation system. Apparently the main purpose of these contracts was to furnish a connecting drainage system for San Juan District, Donna District and Engelman District, which would ultimately empty into the Hidalgo County Floodway. It seems that Hidalgo County was also interested in establishing a drainage system for the County and paid Donna District the sum of $120,000 to help defray the expenses of the drainage work.

About the time these suits were filed in the year 1952, there was a very severe drought existing in the Lower Rio Grande Valley and irrigation water was exceedingly scarce. For many years the Engelman

District and its successors and assigns had used the water from this drainage system without interference. However, when irrigation water became scarce the defendants began to pump water from the Donna drainage system for the purpose of irrigating their crops and this suit followed.

The appellants asserted a right to use this drainage water, upon the theory that it did not belong to Donna District in the first place, and therefore the sale of it by the Donna District to Engelman was of no effect. The defendants pointed out that the drainage ditches were upon lands owned by them and they had never granted any easement to Donna District to build such ditches over their property. They admitted, however, that the ditches were dug and constructed with their consent.

Appellee makes the following statement on page 33 of its brief, with which we agree:

"While it has been repeatedly held by courts and stated by the text writers that ownership of land upon or through which artificial channels pass carries no right to the use of water flowing in such artificial channels (Harrell v. F. H. Vahlsing, Inc., Tex. Civ.App., 248 S.W.2d 762, and authorities there cited), yet we will assume, at least for the sake of this argument, that such channels must have been placed or must be upon the land in virtue of some easement or leave granted by some previous or then owner of such land, or acquired by prescription."

It is plain that if Donna District had the usufruct of the waters flowing into its main drains and had the power to sell this usufruct, it had done so and thereby appellee had become the owner of such usufruct to the exclusion of appellants for all time to come.

Appellee's contention that Donna District originally owned and held the usufruct of the water in its main drains was based upon the contention that Donna District had acquired easements over the land where the drains were dug and constructed, in three ways, to-wit:

(a) By written easements contained in two former deeds, one from John T. Beamer, dated June 2, 1915, and the other from A. F. Hester, Trustee, dated September 25, 1904.

(b) By consent of the landowners to the construction of the drains upon their land, and

(c) Easement by prescription.

It was this last theory which was submitted to the jury by Special Issues Nos. 1, 2 and 3, all of which issues were answered unfavorably to appellee, and this disposes of contention (c).

■ We do not agree that appellee had a written easement over the land occupied by the main drains under the provisions of the John T. Beamer deed or the A. F. Hester deed, because the record shows conclusively that at the time these deeds were executed no one had in mind that drainage ditches would ever be necessary and the easements granted in those deeds related to irrigation canals, but not to drainage ditches. At least we are left in doubt under this record of the existence of such written easements.

This brings us to a consideration of the remaining contention of an easement by consent. To be more exact, appellee contends that the landowners consented to the building or digging of the drainage ditches over their land, and such ditches having been constructed in the nature of public works, and being constructed by a municipal corporation possessing the power of eminent domain, the landowners lost all right to reclaim the land over which the ditches were built, and their remedy, if any, would be a claim for compensation, and that thus the Donna District acquired, in effect, an easement over the land after the ditches were built and put into use with the consent of the landowners, subject only to the possible paying of compensation.

In Willacy County Water Control and Improvement District No. One v. Todd,

Tex.Civ.App., 255 S.W.2d 320, 324, this Court said:

"Appellant had the power of eminent domain and appellee did not lose his right to compensation and damages by his failure to protest when he learned that appellant had begun the work of excavating the ditch on his land. 16 Tex.Jur. 952, § 280, where it is said:

"'Consent by a land owner to an entry upon his land and the construction of a public work thereon operates as a waiver of any right to recover the land or to enjoin the work. However, the consent to an entry upon the land is not construed as an abandonment of the right to have compensation subsequently adjusted, unless the circumstances are such that this is the only proper inference from the conduct of the plaintiff.'"

■ Even if appellee did not acquire an easement by prescription as was found by the jury, and even if it did not have a written easement by reason of the Beamer and Hester deeds, it did have a right in the land similar to an easement, by reason of the fact that it constructed a public work at great expense over the land occupied by the main drains with the consent of the landowners. The only right the landowners thereafter had in the land was the possible right to demand compensation for the land taken. Under such circumstances Donna District held the usufruct of the water in such ditches and the owners of the land over which these ditches went did not have any right superior to the Donna District to divert such water from the main drains.

■ The Donna District having the usufruct of the water in the drains, could sell this right to Engelman unless such a sale would be against public policy. The Donna District was organized for the purpose of furnishing irrigation water to the landowners within the territorial boundaries of such district, and this was and is its main purpose. No doubt, at the time Donna Dis-

trict made the contract with Engelman no one thought that any one owning land in the Donna District would ever desire to pump water from the drainage ditches. At that time there was an ample supply of river water for all landowners in the Donna District for irrigation purposes and drainage water was regarded as inferior water. However, during the great drought existing in 1952 any kind of water was considered valuable. The Donna District had many years before sold to Engelman the right to use this water perpetually. In 1927, when the contract was made, it looked like a good deal for the Donna District. It wanted to get rid of this drainage water and Engelman could use it and was willing to spend some $109,-000.00 on drainage ditches in order to secure it. We are not prepared to say that it was against public policy for Donna District to sell this water to Engelman under all of the circumstances that existed at the time the contract was entered into. The fact that circumstances have now changed does not alter the situation and make the contract void as being against public policy, in that a water district some twenty-five years ago had contracted away water which could now be used by its own landowners.

The real theory upon which the appellants defended this suit in the trial court was that this main drain from which they were pumping water had become a part of the county drainage system and the county and not the water district owned and maintained this drainage system.

■ The evidence does show that this drainage ditch, which lies across the San Juan, Donna and appellee's district, was a part of a much larger drainage system maintained by the County of Hidalgo; that the county had widened and deepened these drains, so that they could take care of flood waters from other areas, but there is nothing to show that the county was asserting any right in the water found in these drains or any title to the drains themselves. It was shown that the county had been offered deeds to the drains and had

refused to accept them. In about 1937 the ownership of the drains had become an issue in the county judge's race, candidate Ewing favoring county ownership of the drains, and candidate Aldrich opposing ownership, and Aldrich won, thus showing that the sentiment of the majority of the voters of the county was against county ownership of the drainage system. It matters not how many times the county may have widened, deepened and cleaned out these drains. As long as the county asserted no right to the drains or the water therein, and as long as such actions were not adverse to the original owners of the drains, the county could not establish an easement by prescription to these drainage ditches.

■ Appellants filed a plea in abatement herein, contending that the landowners within the boundaries of Donna District were necessary parties to this suit, and further that Donna District and Hidalgo County were necessary parties. The record fails to show that this plea was ever presented to the court and overruled by the court. This matter presents no reversible error.

Appellants contend that the court erred in refusing its specially requested issues, relating to the alleged prescriptive rights of Hidalgo County in the drainage ditches herein involved. The issues were not in proper form and for this reason no error was committed by the trial court in refusing them. Further, the evidence shows that the acts of the county were not done under any claim of right and were not adverse to the rights of Donna District. Under such facts, it is immaterial that the county widened, deepened and cleaned these drains on several occasions.

■ The permits which appellee acquired from the State Board of Water Engineers are immaterial to any issue here raised. The waters entering and flowing in these drainage ditches were developed or captured waters, and the State Board of Water Engineers had no jurisdiction to issue a permit controlling their use.

Appellee's cross-assignments of error have been examined, are found to be without merit and are overruled.

The judgment of the trial court is affirmed.