G. Garrett LEWIS et al., Appellants,

v.

SAN ANTONIO RIVER AUTHORITY, Appellee.

No. 13589.

Court of Civil Appeals of Texas.

San Antonio.

Nov. 23, 1960.

Rehearing Denied Jan. 4, 1961.

Foster, Lewis & Langley, Oliver & Oliver, San Antonio, Will Wilson, Atty. Gen., Houghton Brownlee, Jr., Asst. Atty. Gen., Hill & King, Mission, for appellants.

Sawtelle, Hardy, Davis & Goode, Harvey L. Hardy, David H. Brune, San Antonio, for appellee.

BARROW, Justice.

Appellee, San Antonio River Authority, a governmental agency and body politic, brought this suit against appellants, G. Garrett Lewis and numerous others, as owners of land and certain property rights held by them in connection with the San Juan Dam, head gate, ditch and water rights upon and along the San Antonio River. Appellants were sued both individually, as owners of tracts of land, and as a class. By this suit appellee seeks a declaratory judgment holding that it is not liable in damages for the taking, damaging or destruction of appellants' property in connection with changing, straightening, widening and deepening of the bed of the San Antonio River, a project in which appellee is engaged as a flood control measure. The project does not involve navigation or an aid to navigation, nor is any right of appellee to act in aid of navigation involved. Appellants filed an answer and cross-action, joining the City of San Antonio as a cross-defendant. The City answered by general denial. The answer of appellants opposed a declaratory judgment and sought a judgment on their cross-action for their individual damages for the taking, damaging and destruction of their respective properties.

Appellee presented a motion for summary judgment supported by detailed maps, plans and charts prepared by its engineers, together with affidavits of expert witnesses, also with request that the court take judicial notice of historical facts, court decisions, and other facts which are matters of common knowledge. Appellants answered the motion and supported their answer by affidavits and attached copies of the original grants of their respective predecessors in title. The court granted the summary judgment.

The appellee was created by act of the Legislature as a Conservation and Reclamation District under authority of Article 16, Section 59, of the Constitution of the State of Texas, Vernon's Ann.St., and under the provisions of Article 8280–119,

Vernon's Ann.Civ.Stats., with the powers, rights, privileges and functions prescribed therein. The Act specifically vests the District, for the purposes of the Act, with such title and right of control as the State has, or may have, in, to and concerning the natural bed and banks of the San Antonio River, and such tributaries thereof as may be affected by the prosecution of the functions of the District. The appellants are individual owners of separate tracts of land in the vicinity of Old Mission San Juan in Bexar County, together with certain water rights or titles. Such water being supplied by a dam on the San Antonio River with a head gate located near old Mission San Jose. Said dam and head gate, at all times pertinent, until the matters involved herein, had been turning a part of the natural flow of the river into a ditch known as San Juan Ditch, wherein it proceeded down to the irrigated farms of each of appellants.

Appellee is and has been for some two years prior to the filing of this suit, engaged in a project, as a flood control measure, of straightening, widening, deepening and improving the San Antonio River, as well as San Pedro, Alazan and Martinez Creeks, each of which are natural flood drainage for the City of San Antonio.

The problems involved which are presented by appropriate points and counter-points in this appeal are quite numerous and intricate. We shall not consider those points separately, but consider the respective contentions and positions of the parties, without regard to the order of the points or counter-points. In connection with the work of improving the San Antonio River, appellee has destroyed the San Juan Dam across the river bed and opened a new channel some two hundred feet west of the old river bed at the point where the dam was and where the head gate and the end of San Juan Dam are situated. The new channel is several feet deeper than the old river bed. Thus leaving the old river bed dry except perhaps at flood stage, when high water might flow through.

478

We shall first consider appellee's counter-points by which it seeks to uphold the judgment of the trial court. (1) That flood control is a vital need for the City of San Antonio. (2) That its project in an effort to effect such flood control is a proper exercise of the police power. (3) That the loss of appellants' water rights as a consequence thereof was *dammum absque injuria* as a damaging of property under a reasonable exercise of the police power.

From the record before us as well as from matters of common knowledge and from historical facts of which we may take judicial knowledge, we know that San Antonio is a large and rapidly growing city, of some six hundred thousand population at the present time. It covers an area of several hundred square miles, the major portion of which is covered with buildings, pavement and other improvements, leaving only a small portion of the earth exposed to absorb moisture, so that most of the rainfall must drain into the San Antonio River, or its tributaries and thence into the river. The river and these tributaries which meander through the City are extremely winding. At the time appellants acquired grants from the Mexican Government the City of San Antonio was a small village located several miles above the San Juan Dam. It is a well known fact that the San Antonio river bed is and always has been comparatively narrow and shallow, so that in recent years it and its tributaries have been too narrow and shallow to carry off the water on occasions of unusually heavy rains, resulting in several major floods, causing loss of lives and much property damage, the first of which occurred in

the year 1921. It is apparent that the real cause of the difficulty is that the City has outgrown the river. This fact required the use of some measures to alleviate the conditions, and they brought about the creation of appellee and the prosecution of its project. We think it is obvious that under existing conditions the river became inimical to the health, safety and welfare of said City and its inhabitants, and appellee was authorized to exercise the powers and authority vested in it by the Act creating it and by the laws of this State governing such corporations.

We come now to the rights of appellants. The San Juan Dam was originally constructed in the year 1731, when the territory comprising the State of Texas was a province of the kingdom of Spain, for the purpose of irrigating arid land in the area of Mission San Juan. The water was lifted by the dam to a height which caused a portion of the water to flow through the head gate into the San Juan Acequia (ditch) which ran on the contour of the land to and through the land irrigated and thence back into the river at a point some distance below the dam. In 1824, after Mexico had gained its independence from Spain, and this territory was a province of that Nation, and at a time when the San Juan Dam, head gate and ditch were still in continuous use, the Mexican Government made numerous small grants of land, together with rights in the irrigation system, to numerous grantees who are appellants' predecessors in title. It is not disputed that appellants' titles are deraigned from those original grantees. Portions of one of said grants are copied in footnote.[1]

1. "In the City of San Fernando de Bexar, February 5, 1824.
  "I, Jose Antonio Saucedo, first in authority in the Very Excellent Provincial Deputation of this Province, vested with the authority of Gefe Politico of the said Province, by virtue of the command of Their Exalted Highnesses, the Supreme Executive Power, to the effect that the Missions of this Province be delivered to the Bishop and their lands be distributed among residents in need of them, in view

of the return submitted by the Illustrious Ayuntamiento in its preceding report; knowing of the merits of the petitioner, Bachelor Francisco Maynes, his good behavior and his devotion to agricultural toil, I have decided to grant him and I do hereby grant him in the name of the Mexican Nation, two dulas of irrigation water with the accompanying land for cultivation; the water to be taken from the irrigation conduit of the Mission of San Juan Capistrano, so that as his own

■ It is well settled that the rights of appellants in and to the water rights must be governed by the Mexican (Spanish) law in effect on the effective date of the grants. Whatever rights were granted to them at that time, they now have. Luttes v. State, Tex., 324 S.W.2d 167; Rudder v. Ponder, 156 Tex. 185, 293 S.W.2d 736; Giles v. Basore, 154 Tex. 366, 278 S.W.2d 830; State v. Balli, 144 Tex. 195, 190 S.W. 2d 71; Humble Oil & Refining Co. v. Sun Oil Co., 5 Cir., 190 F.2d 191; 191 F.2d 705, certiorari denied 342 U.S. 920, 72 S.Ct. 367, 96 L.Ed. 687. We note from the express language of the grant appearing in the footnote, that Francisco Maynes is granted two dulas of water "to be taken from the irrigation conduit of the Mission of San Juan Capistrano," along with the land described in the grant. We think it is clear that the dam, head gate and ditch were then and remained a part and parcel of "the irrigation conduit of the Mission of San Juan Capistrano." The grant was not merely two dulas of water in the ditch, but included the right to the dam and head gate as well as the irrigation ditch.

■ We have examined the Spanish laws cited and quoted by appellee and find nothing which would authorize the destruction of the San Juan Dam. The San An-tonio River not being navigable in fact, we are of the opinion that even in the absence of an express grant any citizen might open an acequia or channel into the river and extract irrigation water, provided it did not interfere with navigation and did not restrain the common use of "all men generally." Law 8, Title 28, and Law 18, Title 28, Partidas 3 (Scott translation thereof). That being substantially the same as our law of riparian rights. We are also of the opinion that the Mexican grants expressly granted water in the ditch and not a mere right to take water from the river. We are also of the opinion that the grants, when construed in the light of facts existing at that time and long prior thereto, the dam and head gate being integral parts of the irrigation system, together with the ditch, recognized the legal existence of the dam and head gate and their continued existence and use by the owners of the land as appurtenant to the grants. Moreover, undoubtedly these water rights are hereditaments which pass with the title to the land. Motl v. Boyd, 116 Tex. 82, 286 S.W. 458. It is well settled that appellee has both the power of eminent domain, and in a proper case the right to exercise the police power of the State. Missouri, K. & T. R. Co. of Texas v. Rockwall County Levee Imp. Dist. No. 3, 117 Tex. 34, 297 S.W. 206, 210.

property he may cultivate and enjoy the land within the term prescribed by law; he may possess it for his own use or the use of his successors at the rental of 10 pesos annually which he must pay for the said dulas granted him for the period of four years, in accordance with the provisions of the Very Excellent Provincial Deputation. After the four years have elapsed he may enjoy the two dulas of irrigation water, clear of all encumbrance and as such he may sell or mortgage them at his pleasure.

"To this end Francisco Maynes will be placed in formal possession of the two dulas of water, and will be provided with any certified copy or copies he may request in protection of his title.

"Thus by this decree I commanded and signed my decree before witnesses to my proceedings for lack of any notary within the meaning of the law; to which I bear witness. * * *

"I, Jose Antonio Saucedo, * * * went to the land which by the preceding decree I had granted to the petitioner, Bachelor Francisco Maynes, and there I measured two suertes of land with 200 varas on each frontage. The land is bounded on the East by the Acequia Madre; on the North by lands granted to Jose Ygnacio de Leon; on the West by the San Antonio River and on the South by lands to be granted.

"I placed the petitioner, Bachelor Francisco Maynes, in real and corporal possession of the land with its accompanying irrigation water, and shouted in loud and intelligible tones, 'In the name of the Mexican Nation and by virtue of the authority vested in me by Their Exalted Highnesses, the Supreme Executive Power, for distribution of the lands of these Missions, I place you in possession of this labor for you, your successors and heirs.'"

■ This brings us to the controlling question in the case. Appellants contend that by the destruction of the San Juan Dam and the removal of the channel of the San Antonio River to the new location, their property was and is being taken without due process of law, within the meaning of the Constitution (Amendment Fourteen) of the United States, and without compensation, contrary to Article 1, § 17, of the Constitution of the State of Texas. On the other hand, appellee contends that none of appellants' property (meaning the San Juan Ditch and head gate) has been taken, damaged or even touched; that appellants have no property right in the San Juan Dam or gravity flow of the river; and that any damages suffered by appellants are what is known as consequential damages, and are not recoverable when incurred in the reasonable exercise of the police power of the State. We agree with appellants.

As stated above, we think appellants have a property right in the dam which raises the water to the level of the head gate, whence it flows by gravity into and through the ditch. This was granted to them by the sovereign power at that time and must be governed by the laws of the Sovereign that this facility for irrigation was a part of the land at that time. Motl v. Boyd, supra. There can be no doubt that appellee has the authority, through the exercise of the power of eminent domain to take the property, but we cannot agree that it may take such property without compensation, through the exercise of the police power of the State.

The well settled law governing the situation here presented is stated in Missouri, K. & T. R. Co. of Texas v. Rockwall County Levee Imp. Dist. No. 3, supra, as follows:

" 'There is no controversy but that the district is liable for compensation for the property actually taken by condemnation, but the difficulty arises at the point of holding it liable for damages to, or destruction of, property not actually taken. This damage is frequently referred to as "consequential" damages, but that term has been used so indiscriminately and in such contradictory senses as to become meaningless. It is sometimes used to denote damages recoverable by law, to distinguish them from the compensation allowed for property actually taken and arising from injury to other property not actually taken. In this sense such damages under our Constitution and statutes are recoverable. Again, however, the term is used to designate those injuries which the law will not redress in any event. By whatever term they may be designated, we hold that under our Constitution "no person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made" * * * (article 1, § 17), and under the statutes under consideration, the defendant in error is liable and must pay compensation for all property of another taken, damaged, or destroyed by it in the exercise of its functions as a district under the statutes. Fort Worth, etc., District v. Fort Worth, 106 Tex. 148, 158 S.W. 164, 48 L.R.A.(N.S.) 994; Dallas County, etc., District v. Ayers (Tex. Civ.App.) 246 S.W. 1112; Fort Worth, etc., District v. Weatherred (Tex.Civ. App.) 149 S.W. 550; Hopkins County, etc., District v. Hooten (Tex.Civ.App.) 252 S.W. 325; Hopkins County, etc., District v. Smith (Tex.Civ.App.) 243 S.W. 793; Matagorda, etc., District v. Bordon [Borden] (Tex.Civ.App.) 195 S.W. 308."

In that case the Court held that the district was liable to the Railroad Company for the taking, damaging or destruction of its property, but not for the cost and expense of raising its track to conform to the "lay of the land". This it was required to do at its own expense under Art. 6485, Vernon's Sayles' Ann.Civ.St.1914.

In that connection the Court said:

"Damage as such, within the contemplation of the principle under con-

sideration, necessarily means compensation to the owner for an injury to his property, and this postulates that the owner has such a fixed right in the property as to insist upon its maintenance in its then condition. One cannot be damaged in a legal sense through the destruction of property which he has no legal right to own, keep, or maintain. In such case no legal right is invaded, and this is the very essence of damage."

Appellee also cites Houston & T. C. Ry. Co. v. City of Dallas, 98 Tex. 396, 84 S.W. 648, 70 L.R.A. 850, and Chicago, R. I. & G. Ry. Co. v. Tarrant County Water Control & Imp. Dist. No. 1, 123 Tex. 432, 73 S.W.2d 55. These cases are not in point. They were cases in which the railroad company was required by law to conform to the lay of the land, and in the exercise of police power the railroad can be required to change the level of the track without compensation. In other words it has no vested right, but has a continuing duty as circumstances change.

The consolidated case of State v. City of Austin (State v. City of Dallas), Tex., 331 S.W.2d 737, is not in point. The case involved the validity of a Legislative Act which authorized the State to pay a part of the expense of relocating utility lines made necessary by improvement of highways. As incidental to the decision, the Court said that ordinarily, in the absence of assumption by the State of part of the expense, it is the duty of such utility corporations to make the necessary relocations at their own expense. The Court pointed out that the main purpose of roads and streets is for travel and transportation, and that the use thereof by utility companies for laying their lines is subject to police power which may be exercised by the State, County or City. Again, no vested property right is involved.

Appellee cites City of San Antonio v. Pigeonhole Parking of Texas, Inc., 158 Tex. 318, 311 S.W.2d 218, 73 A.L.R.2d 640;

Ellis v. City of West University Place, 141 Tex. 608, 175 S.W.2d 396; Lombardo v. City of Dallas, 124 Tex. 1, 73 S.W.2d 475; and Nichols v. Park, Tex.Civ.App., 119 S. W.2d 1066. We do not regard these authorities as in point. The holding in each case is based on the idea that the property itself or its actual or intended use does or would constitute a nuisance. In such a case the property or its use must be a nuisance in fact, and the owner is entitled to a hearing on the facts by judicial review. City of San Antonio v. Pigeonhole Parking of Texas, Inc., supra; Stockwell v. State, 110 Tex. 550, 221 S.W. 932, 12 A.L.R. 1116. In the instant case, appellee is engaged in a public improvement and consequently is authorized to appropriate appellants' property, but is not authorized to take it without compensation. Appellants own the property taken, damaged and destroyed, their damage is not merely consequential, such as the cost of railroad tracks when required by changed circumstances. We think it is significant that even in the railroad cases the appropriator was required to compensate for the taking, damaging and destruction of the property of the railroad company actually taken, or its use destroyed, as distinguished from the cost of raising its tracks to conform to the lay of the land under its statutory duty.

We conclude that appellants have vested property rights in the San Juan Dam, head gate and ditch, of which they cannot be deprived without adequate compensation, and that the trial court erred in holding that appellants' damages are *dammum absque injuria*.

The judgment is reversed and the cause remanded.

MURRAY, Chief Justice (dissenting).

I do not concur in the holdings of the majority. The effect of the majority opinion is to fix the liability of appellee to appellants and remand the cause for the sole purpose of determining the amount of damages due each appellant.

The concluding paragraph of the opinion reads as follows:

"We conclude that appellants have vested property rights in the San Juan Dam, head gate and ditch, of which they cannot be deprived without adequate compensation, and that the trial court erred in holding that appellants' damages are damnum absque injuria."

The record shows that the San Juan Acequia and Dam, hereinafter referred to as Ditch and Dam, respectively, were built in 1731, when the territory that is now Texas was a part of the Spanish Domain. The San Antonio River is a perennial stream and the bed of the river belonged to the Sovereign. The ditch, head gate and dam must therefore have originally been government property. At least they are not shown to have belonged to anyone else.

In 1824, after Texas had become a province of the Mexican Government, the "Gefe Politico" conveyed to appellants' predecessors in title small grants of land lying between the Ditch and the San Antonio River. These grants did not cover any part of the Ditch or any part of the river bed, but the tracts bordered on both the river and the ditch. Each grantee was granted a right to use certain amounts of water from the ditch for irrigating his land at a certain price to be paid by grantee. The grantees were not granted any interest in the ditch, head gate or dam, only a right to use water. The Mexican Government did not obligate itself to maintain the dam or ditch, nor did it obligate itself to maintain a steady flow of water in the ditch. When the Republic of Texas was established it succeeded to all the rights then held by the Mexican Government. The State of Texas has relinquished all of its rights in the bed of the San Antonio River lying within the city limits of San Antonio to such City, and the State of Texas has conveyed any and all of its rights, title and interest in the river to appellee. Just who owned the dam at the time it was destroyed may not be ·clear, but one thing seems certain, that it did not belong to appellants or their predecessors in title.

The Ditch was an artificial stream, built and maintained through the years by artificial means. It was far from being a natural stream. In 93 C.J.S. Waters § 129, p. 844, it is stated:

"Although riparian rights may be acquired in an artificial watercourse by prescription, as stated infra subdivision d of this section, ordinarily, riparian rights do not attach to artificial streams in artificial channels, and, thus, the natural corporeal right to the enjoyment of an uninterrupted flow possessed by riparian owners of land on natural watercourses does not exist in the water flowing in an artificial watercourse. Hence, the owner of an artificial watercourse is not, in the absence of contractual or prescriptive obligations, ordinarily bound to maintain it for the benefit of adjoining owners, but may stop the supply or change the course of the discharge to suit his own convenience and without becoming liable to such persons. Accordingly, the right of those owners of lands, bordering on or through which artificial channels pass, to the use of the water is an incorporeal right which, in order to exist, must be acquired by grant, express or implied, or by prescription."

In 56 Am.Jur., § 155, p. 624, it is said: "Moreover, as between the respective users of an artificial stream, rights may be acquired by lapse of time, although none can be acquired to compel the continuance of the stream."

In 93 C.J.S. Waters § 129d, p. 845, the following statement is made:

"The use of an artificial watercourse, or the use of the waters flowing therein, may not be regarded as adverse while the user acknowledges the superior right of another and pays compensation for his own use; and if the

right of use of an artificial watercourse has its inception by permission or license there can be no adverse use or possession until the license or permission has been repudiated, knowledge of the repudiation given, and thereafterwards adverse use or possession for the statutory period of time."

See also, Guelker v. Hidalgo County Water Imp. Dist. No. 6, Tex.Civ.App., 269 S.W.2d 551; Harrell v. F. H. Vahlsing, Inc., Tex.Civ.App., 248 S.W.2d 762.

Here the use of the water from the Ditch by the original grantees began with the permission of the "Gefe Politico," and a price was paid for such use. This acknowledgment of the superior right of the government has not been repudiated, and therefore appellants have not acquired any prescriptive or riparian right to use water from the Ditch.

I cannot agree that appellants have acquired vested property rights in the Dam, head gate and ditch, of which they cannot be deprived without adequate compensation. In this summary judgment proceeding the most that can be determined is the existence of a fact question as to this matter. I, therefore, respectfully dissent from the holding of the majority.

On Motion for Rehearing.

BARROW, Justice.

In deference to an able and exhaustive motion for rehearing filed by counsel for appellee, we feel we should supplement our original opinion.

Appellee urges that our original opinion has left some confusion, contending that we held in effect that the San Antonio River, with its winding, shallow and narrow bed in fact constitutes a nuisance. We did not so hold nor so say. What we did say and hold was that the City, with its hundreds of square miles of improvements, buildings and pavement, due to growth and expansion, had outgrown the river. The history of San Antonio with its winding river is a matter of common knowledge of which we take judicial notice, and we need not repeat that this fact would authorize the project in which appellee is engaged, but would not authorize the taking of private property without compensation. To illustrate, we think a narrow winding street in a small community which has grown into a large city would present an analogous situation. It would authorize the project, but would not authorize the taking and appropriation of private property for the purpose, even though it be conceded that the street as it exists constituted a menace to the life and limb of the traveling public.

Next appellee complains that our original opinion does not make clear just what property was taken, damaged or destroyed. In that connection appellee asserts that the opinion stresses Appellants' right in the dam. The opinion did point out that the dam was part of "the irrigation conduit of the Mission of San Juan Capistrano." Appellee now contends that when the channel has been changed to a location some two hundred feet west of the old channel where the dam was located, and the channel lowered below the old channel, the dam would be useless. Of course, the changing and lowering of the channel would render the dam useless. We think our opinion made it clear that the changing and lowering of the channel, as well as the destruction of the dam, left the headgate and ditch high and dry, above the present water level, and as a consequence thereof appellants are left without water in what is left of the conduit.

Appellee contends that our original opinion does not make clear just what title appellants have or had, and particularly that appellants had title or right to the gravity flow of the water. We think the grants, an example of all of them appears in a footnote to our original opinion, make clear just what was granted and owned, viz., "two dulas of irrigation water with the accompanying land for cultivation; the water to be taken from the irrigation conduit of the Mission of San Juan Capistrano,

* * *." In that connection appellee argues that our original opinion does not make clear that appellants had the right of gravity flow of water into and through the conduit to their land. If our original opinion was susceptible of any other interpretation, we now desire to make it clear that we do so hold. Appellee argues that appellants are entitled to their dulas of water out of the San Antonio River but not to gravity flow. Appellee takes the position that as long as it has no objection to appellants' pumping water out of the river, they have suffered no compensable loss or damage. We do not agree. The grant does not grant water out of the San Antonio River, in fact, the river is not even mentioned in the grant except as one of the boundaries of the land. The only thing which connects the river with the water rights is the fact that at the time the grants were made to appellants, the conduit by virtue of the dam extended into and across the river bed, raising the level of the water and turning it into the ditch. This right to the water flowing in the ditch was granted by the Sovereign Government, acting by and through its duly constituted officials. It was not a mere privilege or license which might be taken or withheld at will, but a perpetual right to the grantee, his successors, heirs and assigns. It was a hereditament running with the land.

Appellee says that under Mexican or Spanish law the Sovereign had title to the beds of all streams, and that title thereto could not be alienated except by express grant in clear language. We agree with that contention, but it is apparent from the express language of these grants that the Sovereign did make such express grant in the usual and customary way, as well as by the legally recognized method. See, Dobkins, Spanish Element in Texas Water Law, pp. 102 et seq. Appellee apparently contends that since in these grants the Sovereign did not expressly grant title to any of the bed of the stream appellants can claim no property right in the dam in the bed of the river. Appellee relies on such cases as Heard v. Town of Refugio, 129 Tex. 349, 103 S.W.2d 728; Manry v. Robison, 122 Tex. 213, 56 S.W.2d 438; State v. Grubstake Investment Association, 117 Tex. 53, 297 S.W. 202; Phillips v. Ayres, 45 Tex. 601; Swisher v. Grumbles, 18 Tex. 164. These were all cases in which private owners claimed title to the bed of the streams involved by virtue of the description of the survey crossing the stream, or by virtue of being riparian to the stream and claiming title to the thread of the stream. We are in accord with these decisions and are also in agreement that they are in accord with Spanish Civil Law, but the instant case is distinguishable in that the San Juan claim had been in existence as a part of the conduit for almost a century at the time of the grants and the Sovereign in making the grants recognized the legality of its existence and expressly authorized its continued existence in making the grants of water rights, and thereby granted to appellants' predecessors in title a servitude in the river for that purpose, whether it be called an easement or other class of servitude. These water rights are property rights within the meaning of Art. 1, § 17, of the State Constitution, and cannot be taken without compensation. Greenman v. City of Fort Worth, Tex.Civ.App., 308 S.W.2d 553, wr. ref. n. r. e.

In San Juan Ditch Co. v. Cassin, Tex.Civ. App., 141 S.W. 815, 816, writ refused, this Court had before it a controversy between the owners of water rights in "Acequia de la Espada" and the owners of the water rights in "Acequia de San Juan" (the same ditch here involved). The case was on appeal from a temporary injunction which sought equitable division of the water between the users from the two ditches. The case involved the claim of prior exclusive rights of use on the part of the users from the San Juan ditch. This Court held that the rights were on a parity and said:

"While we do not question the power that was vested in the Mexican government to make valid grants of the waters of public streams to individuals *that*

*would give exclusive prior right*, it has not undertaken to do so in this instance, and there is nothing in the grants that justifies such a construction." (Emphasis added.)

Thus it is apparent that the Court recognized and upheld the grants of rights of the parties in and to the waters of the river and the existing conduits as the means of securing such waters, and construed such grants as covering such means under the Spanish Civil Law.

Appellee's motion for rehearing is overruled.

MURRAY, C. J.  I dissent for the reason heretofore stated.